[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dayton Bar Assn. v. Scaccia,* Slip Opinion No. 2014-Ohio-4278.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4278

DAYTON BAR ASSOCIATION *v.* SCACCIA.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dayton Bar Assn. v. Scaccia,* Slip Opinion No. 2014-Ohio-4278.]**

*Attorneys—Misconduct—Trust-account violations—Neglect of an entrusted legal matter—Charging a nonrefundable fee—Partially stayed suspension— Restitution ordered.*

(No. 2013-1982—Submitted April 30, 2014—Decided October 2, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 12-013.

————————————————

KENNEDY, J.

{¶ 1} Respondent, John Joseph Scaccia of Dayton, Ohio, Attorney Registration No. 0022217, was admitted to the practice of law in Ohio in 1983.  In December 2011, relator, the Dayton Bar Association, filed a complaint charging Scaccia with failing to represent clients in a competent manner, failing to

maintain complete records of client funds, and failing to maintain a client trust account.

{¶ 2}   On March 11, 2013, relator filed a second complaint, alleging that Scaccia had improperly charged a nonrefundable fee, failed to deposit fees in a trust account, failed to provide an accounting of a client's fees, and failed to act competently in representing two clients.   After a panel of the Board of Commissioners on Grievances and Discipline held a hearing, a second complaint was filed, the two cases were consolidated, and a second hearing was held.   Based upon the documentary evidence, stipulations, and testimony, the panel recommended that Scaccia be suspended from the practice of law for one year with six months of the suspension stayed.   The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 3}   Scaccia has filed objections, and relator has filed a brief in support of the board's recommendations.   We adopt the board's recommendation of a one-year suspension with six months of the suspension stayed, and we impose conditions on the stay and reinstatement, including restitution.

## I.  Misconduct

### A.  The Mound Matter

{¶ 4}   After Scaccia was admitted to practice, he worked as an attorney for the city of Dayton from 1984 to about 2000.  In 2000, Scaccia left the city and began working as an associate for the Brannon Law Office and Dwight Brannon. In 2001, former employees of the Mound Laboratory ("Mound clients") hired the Brannon Law Office, Dwight Brannon, and Scaccia to represent them regarding wrongful termination of their employment.  Many of the Mound clients signed fee agreements that required them to pay a $1,500 retainer each or per couple as a deposit for the costs and expenses of litigation.  However, only a few of the Mound clients actually paid $1,500, with most paying lesser amounts.  The

Mound clients paid a total of $22,000, which was deposited in the Brannon Law Office's trust account.

### 1. Litigation

**{¶ 5}** On May 22, 2003, Scaccia and Brannon filed a 127-page complaint in federal court on behalf of the 47 clients, alleging wrongful termination of the Mound clients. On June 22, 2003, they filed a 132-page amended complaint.

**{¶ 6}** On March 1, 2004, Scaccia left the Brannon Law Office, and he has been a solo practitioner ever since. Scaccia continued to represent the Mound clients in his solo practice. The Brannon Law Office transferred to Scaccia the remaining balance of the Mound clients' retainers, in the amount of $21,875, which Scaccia deposited in his trust account.

**{¶ 7}** On October 5, 2004, the court dismissed several defendants from the case. The court also addressed several motions filed by the Mound clients, including a motion for leave to file a brief in excess of 20 pages, a motion for an extension of time, and a motion for leave to file a late reply. The court granted the Mound clients' motion to permit late filing. However, the entry admonished Scaccia for mismanaging the case, pointing out that plaintiffs had requested and received seven extensions of time to respond to two motions to dismiss. Despite finding good cause to overrule plaintiffs' motion to permit late filing, the court granted the motion so as to not "frustrate the process."

**{¶ 8}** In the entry, the court stated:

> Thus far, Plaintiffs have filed several documents out of time, they have filed at least two documents without proper signature, they have filed several documents in duplicate but with different captions and they have filed several documents without the necessary approval of the Court. All of these actions are offensive

to the dignity and power of this Court and its rules of procedure. Future occurrences will not be tolerated.

{¶ 9} Finally, the entry ordered the plaintiffs to file an amended complaint within 30 days because the existing complaint was confusing regarding which Mound clients were asserting which claims and because it contained insufficient factual allegations to support the causes of action.

{¶ 10} The Mound clients filed a motion requesting an extension until November 25, 2004, to file the amended complaint. Scaccia testified that when he realized that the November 25 deadline was Thanksgiving, he called opposing counsel, who agreed with Scaccia that the rules permitted filing the amended complaint on the 26th.

{¶ 11} The court granted an extension of time but ordered the amended complaint to be filed by November 24, 2004. Scaccia testified that he did not receive notice of this order. Consequently, Scaccia filed the amended complaint on November 26, 2004.

{¶ 12} On November 29, 2004, the court issued an order striking the complaint as having been filed late without permission from the court. However, because Scaccia did not check the court's docket, he did not realize until later that his amended complaint had been rejected. Thus, the Mound clients did not file a motion requesting the court to accept the late amended complaint until January 5, 2005.

{¶ 13} Finding the neglect not excusable, the court issued an entry on August 3, 2005, denying the motion, which terminated the Mound clients' case. In its entry denying the Mound clients' motion for leave to file late, the court stated:

The Motion for leave to file out of time that is now before the court must be reviewed in light of several admonitions in the Order that were directed to the Plaintiffs. The Plaintiffs had disregarded the Local Rules of Civil Procedure and the required approvals of the Court several times. In the order, the Court repeatedly recognized that Plaintiffs' conduct created a 'tortured process' that is 'offensive to the dignity and power of this Court and its rules of procedure.' The Court warned Plaintiffs at least six times in the Order that 'future occurrences' would 'not be tolerated.'

{¶ 14} The Sixth Circuit Court of Appeals affirmed the district court's judgment, and on May 29, 2007, the United States Supreme Court declined to hear the Mound clients' appeal.

### 2. Clients' Funds and Records

{¶ 15} The parties stipulated that all of the Mound clients' fees that had been transferred to Scaccia's trust account ($21,875) had been spent. Scaccia testified that the expenditures were for acquiring extra office space, file management, copying, postage, mileage, filing fees, and research. He testified that he "felt that the records were adequately maintained at the time." However, Scaccia provided only the following documentation to support the expenditures: (1) a check for $255 payable to the clerk of courts regarding the Mound case, (2) two checks totaling $379.09 with memo lines referring to the Mound case, (3) a check for $401.45 to himself with "Kinko's" and "Mound" in the memo line, and (4) an invoice in the amount of $3,681.32 for printing and other costs for the appeal to the United States Supreme Court. Scaccia admitted that he could produce no other records regarding the Mound clients' funds from 2004 to 2007

or his trust account. The documented expenses for the Mound clients thus total $4,716.86. That means that $17,158.14 of the $21,875 spent was undocumented.

{¶ 16} Scaccia testified that he decided to refund to the Mound clients some of their retainers because "[i]t felt like the right thing to do." He testified that the entire $21,875 had been spent before he started giving refunds. The parties stipulated that he deposited his personal funds in his trust account and that Scaccia refunded one couple their entire $1,500 retainer. In July 2008, Scaccia also refunded $300 to 11 other Mound clients. However, the other Mound clients did not receive any refund.

### 3. Violations

{¶ 17} We agree with the board that there is clear and convincing evidence that Scaccia violated former DR 6-101 (prohibiting neglect of a legal matter entrusted to an attorney) by failing to competently manage the litigation for the Mound clients. We also agree that Scaccia violated former DR 9-102(B)(3) (requiring a lawyer to maintain complete records of all client property coming into the lawyer's possession and render appropriate accounts to each client) by failing to keep complete records of the Mound clients' funds from 2004 to 2007. Finally, we agree that Scaccia violated Prof.Cond.R. 1.15(a)(2) (requiring lawyers to keep complete records of clients' funds), 1.15(a)(3) (requiring lawyers to maintain bank account records), and 1.15(a)(4) (requiring lawyers to maintain bank statements, deposit slips, and canceled checks) by failing to maintain client and bank records from 2007 to 2010.

{¶ 18} We also agree with the board that there is not clear and convincing evidence that Scaccia violated DR 7-101 (forbidding intentional failure to perform duties to a client) or 9-102(A)(1) or (2) (requiring deposit of specified funds into a trust account and forbidding commingling), and we dismiss those charges.

6

### B. Grider Matter

{¶ 19} Kimberly Grider hired Scaccia to represent her regarding an employment matter. The fee agreement signed by Grider did not state that she might be entitled to a refund if Scaccia's legal representation was not completed for some reason. Moreover, it required Grider to pay Scaccia a "flat non-refundable fee" of $2,000. Scaccia acknowledged that he deposited Grider's fee into his law firm's operating account, rather than his trust account.

{¶ 20} Subsequently, Grider gave an additional $110 to Scaccia for expenses. Scaccia admitted that this money was also deposited into his operating account rather than his trust account.

{¶ 21} On March 20, 2012, Grider sent a letter terminating Scaccia's representation and requesting that Scaccia provide her with her "complete file and a complete accounting of all services rendered." Scaccia testified that he gave Grider her file but did not give her a complete accounting of the services that he had rendered to her.

{¶ 22} The board concluded, and we agree, that there is clear and convincing evidence that Scaccia violated Prof.Cond.R. 1.5(d)(3) (prohibiting nonrefundable fee agreements) by charging a client a nonrefundable fee, 1.15(a) (requiring attorneys to keep clients' fund in a trust account), and 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred) by failing to deposit Grider's fee in Scaccia's trust account.

{¶ 23} We also agree that there is not clear and convincing evidence that Scaccia violated Prof.Cond.R. 1.15(d) and dismiss that charge.

### C. Willis Matter

{¶ 24} In April 2011, Jason Willis paid Scaccia $2,500 to file a motion on Willis's behalf for judicial release from prison. Scaccia deposited the entire fee

into his law firm's operating account, not into its trust account. Scaccia did not file the motion for judicial release until January 20, 2012, approximately nine months after Willis hired him. He testified that the delay was to put distance between the motion and Willis's prison infractions for gambling and possessing contraband. Scaccia also claimed that he waited because he was trying to secure a job and housing for Willis to impress the judge. The judge denied Willis's motion for judicial release on March 21, 2012.

{¶ 25} The board found, and we agree, that there is clear and convincing evidence that Scaccia violated Prof.Cond.R. 1.15(a) and 1.15(c) by not depositing Willis's fee into a trust account.

{¶ 26} We also agree that there is not clear and convincing evidence that Scaccia violated Prof.Cond.R. 1.1 or 1.3, because he acted with competence and diligence in filing the motion for judicial release on Willis's behalf. Further, we agree that there is not clear and convincing evidence that Scaccia violated Prof.Cond.R. 1.5(a) by charging an excessive fee. The $2,500 fee included Scaccia's visits to Willis in jail, contacts with the prison system to obtain medical and incident reports, meetings with Willis's family in an attempt to arrange housing and a job, compilation of exhibits that he forwarded to the judge, and filing the motion for judicial release.

{¶ 27} Finally, the board also found, and we agree, that there is not clear and convincing evidence that Scaccia violated Prof.Cond.R. 1.5(d)(3) (prohibiting nonrefundable fees) or 1.15(d)(3) (requiring a full accounting of a client's funds).

## II. Sanction

### A. Suspension

{¶ 28} In considering the appropriate sanction for Scaccia's misconduct, we weigh the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). We also consider sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.

**{¶ 29}** The board found the following aggravating factors: (1) a pattern of misconduct, (2) multiple offenses, and (3) refusal to acknowledge the wrongfulness of his conduct. BCGD Proc.Reg. 10(B)(1)(c), (d), and (g). The board also found the following mitigating factors: (1) absence of a prior disciplinary record, (2) absence of a dishonest or selfish motive, and (3) evidence of good character and reputation. BCGD Proc.Reg. 10(B)(2)(a), (b), and (e). The board recommends a one-year suspension with six months stayed.

**{¶ 30}** In his objections, Scaccia argues that the sanction imposed should be a one-year stayed suspension with a one-year period of monitored probation.

**{¶ 31}** The board examined numerous cases and determined that the sanctions imposed in similar cases ranged from public reprimand to indefinite suspension, depending on the severity of the conduct and the aggravating and mitigating factors. *See, e.g., Trumbull Cty. Bar Assn. v. Rucker*, 134 Ohio St.3d 282, 2012-Ohio-5642, 981 N.E.2d 866 (the respondent received a public reprimand for failing to act with diligence, charging an improper nonrefundable fee, and failing to maintain clients' funds separately in a trust account). However, *Rucker* involved no aggravating factors and involved a consent-to-discipline agreement.

**{¶ 32}** In *Toledo Bar Assn. v. Royer*, 133 Ohio St.3d 545, 2012-Ohio-5147, 979 N.E.2d 329, the respondent neglected a legal matter, did not deposit clients funds into a trust account, and did not maintain complete records of client property, in violation of DR 9-102(A) and 9-102(B)(3) and Prof.Cond.R. 1.15(a)(3). The court imposed a one-year suspension stayed on conditions.

**{¶ 33}** Unlike Royer*,* Scaccia has not paid restitution to all his clients and has not admitted the wrongfulness of his conduct. Scaccia has refunded some retainers to some clients, but not others. Moreover, at his first hearing before the panel, Scaccia's counsel concluded his opening by stating: "We are confident that, at the end of all of the testimony and your consideration of these matters, that

you will find that Mr. Scaccia is not responsible by clear and convincing evidence of the misconduct which Relator has accused him of." Scaccia testified that he never did anything intentionally wrong, and he thought that he represented the plaintiffs "zealously."

{¶ 34} Having considered Scaccia's misconduct and the aggravating and mitigating factors, we agree with the board's recommendation that Scaccia be suspended from the practice of law for one year with six months stayed. The stay will be on conditions set forth below, and reinstatement will be conditioned on payment of restitution as set forth below.

### B. Restitution

{¶ 35} The board did not recommend restitution. However, while we respect the board's recommendations, we are not bound by them. *See, e.g.*, *Cincinnati Bar Assn. v. Heitzler*, 32 Ohio St.2d 214, 220, 291 N.E.2d 477 (1972); *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 708 N.E.2d 193 (1999), paragraph one of the syllabus; see also Gov.Bar R. V(8)(D) ( "the Supreme Court shall enter an order as it finds proper").

{¶ 36} In this case, the parties have stipulated that all but six of the Mound clients paid "some amount of money toward [litigation] expenses," and the evidence shows that Scaccia received a total of $22,000 from those clients. Although the parties stipulated that Scaccia spent all of these funds, the only expenses that he could document were $3,681.32 for an unsuccessful appeal to the United States Supreme Court that was occasioned by his own misconduct.

{¶ 37} Given his duty not only to hold these fees in trust for his clients but also to maintain complete records of all client funds held in his possession and his corresponding failure to do so, we find that restitution is warranted. Therefore, we order Scaccia to make full restitution to each of the Mound clients affected by his misconduct and further order him to provide to relator and this court, within 90 days of the date of this order, a complete list of all of the Mound clients, and a

complete accounting of the payments he received from each of those clients, as well as the amount (if any) that he has previously refunded to each of those clients.

### III. Conclusion

{¶ 38} Accordingly, we suspend Scaccia from the practice of law for one year with six months of the suspension stayed on the conditions that he (1) complete 12 hours of continuing legal education addressing law-office management in addition to the general requirements of Gov.Bar R. X(13), (2) upon reinstatement, serve a one-year period of monitored probation in accordance with Gov.Bar V(9), and (3) commit no further misconduct. If Scaccia fails to comply with any of these conditions, the stay will be lifted and he will serve the full one-year suspension. It is further ordered that Scaccia's reinstatement to the practice of law is conditioned upon his payment of restitution. It is further ordered that within 90 days of the date of this order, Scaccia shall submit to relator and the court a list of all of the Mound clients, an accounting of the payments he received from each of those clients, and the amount, if any, that he has previously refunded to each of those clients. Costs are taxed to Scaccia.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

_____

Brian D. Weaver and Christopher F. Cowan, for relator.

Bieser, Greer & Landis, L.L.P., and David P. Williamson, for respondent.

_____