DAYTON BAR ASSOCIATION *v.* SCACCIA.

[Cite as *Dayton Bar Assn. v. Scaccia,* 143 Ohio St.3d 144, 2015-Ohio-2487.]

(No. 2014–2143—Submitted February 4, 2015—Decided June 25, 2015.)

Per Curiam.

{¶ 1} Respondent, John Joseph Scaccia of Dayton, Ohio, Attorney Registration No. 022217, was admitted to the practice of law in Ohio in 1983. On October 2, 2014, we suspended him for one year, with six months stayed on conditions, for failing to competently manage a case, charging an improper nonrefundable fee, and violating the rules regarding the safekeeping of client funds. *Dayton Bar Assn. v. Scaccia,* 141 Ohio St.3d 35, 2014-Ohio-4278, 21 N.E.3d 290, ¶ 17–25. We conditioned his reinstatement on the payment of restitution, and we ordered that within 90 days of our opinion, he submit to relator, Dayton Bar Association, and this court a complete list and detailed accounting of all clients to whom he owed restitution. *Id.* at ¶ 37–38. Although over eight months have passed since our opinion, Scaccia has not yet submitted the required list and accounting, and he remains suspended from the practice of law.

{¶ 2} While Scaccia's previous case was pending in early 2014, relator filed another complaint charging him with professional misconduct. The parties entered into stipulations of fact and misconduct, which resolved some, but not all,

of relator's charges. After a hearing, a three-member panel of the Board of Commissioners on Grievances and Discipline[1] made findings of fact and conclusions of law and recommended that Scaccia be suspended for one year, with six months stayed on conditions, and that the suspension run concurrently with the sanction we imposed on October 2, 2014. The board adopted the panel's report in its entirety, and no party has filed objections.

{¶ 3} Upon our review of the record, we accept the board's findings of fact, conclusions of law, and recommended sanction.

## Misconduct

### The Boucha Elghouati matter

{¶ 4} In 2007, Scaccia agreed to represent Boucha Elghouati in a personal-injury matter pursuant to a contingent-fee arrangement. In November 2008, Scaccia resolved her claims, received settlement proceeds on her behalf, and deposited those funds in his client trust account. He then provided Elghouati a written breakdown of the purported distribution of the proceeds. However, he failed to sign the written statement or have his client sign it. Accordingly, the parties stipulated and the board found that Scaccia violated Prof.Cond.R. 1.5(c)(2) (requiring a lawyer entitled to compensation under a contingent-fee agreement to prepare a closing statement signed by the lawyer and the client).

{¶ 5} In disbursing the settlement proceeds, Scaccia issued trust-account checks to his law firm for fees, to Elghouati for her share of the settlement, and to two of her medical providers. However, he could not produce any records indicating that he had disbursed settlement funds totaling $2,304.70 in medical expenses to Elghouati's other medical providers. Additionally, during this time period, his trust account did not consistently contain sufficient funds to cover the balance owed to the remaining medical-care providers, and on one occasion, he had overdrawn the account.

{¶ 6} At his disciplinary hearing, Scaccia tendered a check made payable to Elghouati to cover the unaccounted-for funds. The parties stipulated and the board found that Scaccia violated Prof.Cond.R. 1.15(a) (requiring a lawyer to maintain records of trust-account funds disbursed on behalf of a client) and 1.15(e) (requiring a lawyer to promptly distribute all portions of client funds that are held in trust). We agree with the board's findings of misconduct. We also agree with the board's recommendation to dismiss for lack of sufficient evidence

---

1. Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

the remaining charges relating to Scaccia's representation of Elghouati and to dismiss the charges under this count that relator withdrew prior to the hearing.

### The Darla Brewer matter

{¶ 7} In 2012, James Buckner retained Scaccia to represent him in a then-pending criminal investigation. Local police had recently searched Buckner's residence, which was owned by his mother, Darla Brewer. In March 2013, both Buckner and Brewer met with Scaccia at his office, and Buckner paid Scaccia $1,500 to also represent his mother. Scaccia, however, failed to deposit the retainer check into his client trust account. In addition, although he later verbally informed Brewer that he lacked professional liability insurance, he did not provide her with a written notice on a separate form. Based on this conduct, the parties stipulated and the board found that Scaccia violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client on a separate written form that the lawyer does not maintain professional liability insurance) and 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance). We agree with these findings of misconduct.

{¶ 8} In April 2013, a Montgomery County grand jury indicted Buckner and Brewer on drug-related offenses, and Scaccia thereafter met with both clients again. According to Scaccia, he explained his litigation strategy to them and stated that if a conflict of interest later developed, such as either client deciding to testify against the other, he would be required to withdraw as counsel. Brewer, however, testified that she did not recall Scaccia discussing either his litigation strategy or a potential conflict of interest with them at that meeting. And Scaccia never provided Brewer with a written fee agreement, a letter of representation, or any other documentation explaining the nature and scope of his representation or the potential consequences of representing two criminal defendants in the same proceeding. After her arraignment, Brewer was arrested and confined for one night, and she subsequently discharged Scaccia.

{¶ 9} Relator charged Scaccia with several rule violations based on his brief representation of Brewer, including that his representation of both defendants was a conflict of interest and that he had failed to represent her competently. The board, however, found that relator proved only the stipulated violations and a violation of Prof.Cond.R. 1.5(b) (requiring an attorney to communicate the nature and scope of the representation and the rate of the fee, preferably in writing).

{¶ 10} Specifically, the board noted that the Rules of Professional Conduct do not expressly prohibit an attorney from representing multiple defendants in a felony case, although the comments discourage that practice. See Prof.Cond.R. 1.7, Comment 15 ("The potential for conflict of interest in representing multiple defendants in a criminal matter is so grave that ordinarily a lawyer should decline to represent more than one co-defendant"). According to the board, because

there was a possibility of a conflict, Scaccia should have provided a clear explanation to Brewer about the consequences of representing both her and her son in the same criminal matter. The board acknowledged that Scaccia attempted to give her an oral explanation, but the board determined that Brewer did not understand Scaccia's explanation and that his failure to clarify the scope of the representation in writing contributed to her confusion. Thus, the board found that Scaccia violated Prof.Cond.R. 1.5(b) by failing to communicate effectively with Brewer about the nature and scope of his representation.

{¶ 11} We concur in the board's finding. We also accept the board's recommendation to dismiss the remaining charges relating to Scaccia's representation of Brewer, and we dismiss all the counts and charges from the amended complaint that relator withdrew at the hearing.

## Sanction

{¶ 12} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).[2] *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. However, because each disciplinary case is unique, we are not limited to the factors specified in BCGD Proc.Reg. 10(B) and may take into account all relevant factors in determining which sanction to impose.

### *Mitigating and aggravating factors*

{¶ 13} The board found the following mitigating factors: Scaccia lacked a dishonest or selfish motive, he made free disclosures to the disciplinary board and had a cooperative attitude toward the proceedings, the record included evidence of a good reputation, and he acknowledged the wrongful nature of his conduct. *See* BCGD Proc.Reg. 10(B)(2)(b), (d), and (e). Additionally, the board noted that some of Scaccia's ethical violations occurred during a time in which he and his family members experienced health problems and that he has since taken corrective measures to reduce the likelihood of repeating his past mistakes, including hiring staff to ensure compliance with record-keeping protocols.

{¶ 14} As aggravating factors, the board found that Scaccia has prior discipline and that he committed multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(a) and (d). The board notes, however, that the ethical violations here and in his

---

2. Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

previous disciplinary case were caused by the "same inattention to detail and cover overlapping timeframes."

## Applicable precedent

{¶ 15} In support of its recommended sanction, the board cites *Toledo Bar Assn. v. Royer*, 133 Ohio St.3d 545, 2012-Ohio-5147, 979 N.E.2d 329, and *Disciplinary Counsel v. Dockry*, 133 Ohio St.3d 527, 2012-Ohio-5014, 979 N.E.2d 313, both of which are cases involving attorneys who violated primarily the rules regarding the safekeeping of client funds. In *Royer*, the attorney failed to deposit client funds in his trust account, failed to maintain trust-account records, and neglected three matters for the same client. *Id.* at ¶ 4–9. We noted that his ethical violations appeared to be the result of bad time management, and we sanctioned him with a one-year suspension, all stayed on conditions, including that he retain an accountant to review his bookkeeping procedures. *Id.* at ¶ 15. In *Dockry*, the attorney used his client trust account to pay personal and business expenses, failed to maintain ledgers for the account, and engaged in dishonesty by taking an unauthorized loan from his trust account. *Id.* at ¶ 5–10. We noted that since relator had commenced the disciplinary investigation, the attorney had taken corrective measures to ensure that he did not repeat his past mistakes. *Id.* at ¶ 25. Accordingly, we imposed a one-year suspension, all stayed on the condition that he complete one year of monitored probation. *Id.* at ¶ 27.

{¶ 16} Here, the board noted that unlike the attorneys in *Royer* and *Dockry*, Scaccia has prior discipline. However, the board also found significant that most of Scaccia's misconduct—both in the present case and in the prior case—was caused by his "inattention to detail, over essentially the same time period," and that none of his misconduct involved a dishonest motive. Thus, the board recommended that Scaccia be suspended for one year, with six months stayed on conditions, and that the suspension and conditions run concurrently with the sanction that we imposed in his prior case.

{¶ 17} Each case of professional misconduct is an independent action. *Disciplinary Counsel v. Young*, 113 Ohio St.3d 36, 2007-Ohio-975, 862 N.E.2d 504, ¶ 31. However, we have previously held that relatively contemporaneous ethical infractions prosecuted separately do not necessarily justify a harsher sanction. *See, e.g., Akron Bar Assn. v. Snyder*, 87 Ohio St.3d 211, 212, 718 N.E.2d 1271 (1999) ("The board properly noted that the misconduct charged in the complaint occurred in the same period of time as the charges involved in respondent's previous disciplinary case, which resulted in an indefinite suspension, and that these new charges did not require a significantly different sanction"). On the other hand, we have also explained that consecutive sanctions are sometimes necessary "to ensure a lawyer's rehabilitation and thereby protect the public from additional misconduct." *Young* at ¶ 32. Here, the board found that Scaccia has

taken corrective measures to reduce the likelihood of repeating his misconduct, and based on the testimony at the hearing, the board is convinced that Scaccia "is not a risk of committing conscious intentional misconduct in the future." We defer to the board's finding and therefore agree that the new violations here do not require a different sanction than the sanction we imposed on October 2, 2014.

## Conclusion

{¶ 18} For the reasons explained above, we adopt the board's report and recommended sanction. John Joseph Scaccia is hereby suspended from the practice of law for one year, with six months stayed on the conditions that he (1) complete 12 hours of continuing legal education addressing law-office management, including trust-account maintenance, in addition to the general requirements of Gov.Bar R. X(13), (2) submit to monitored probation pursuant to Gov.Bar R. V(21) during any period of his stayed suspension and for one year thereafter, and (3) commit no further misconduct. Scaccia's suspension and conditions shall run concurrently with the sanction we imposed in *Dayton Bar Assn. v. Scaccia*, 141 Ohio St.3d 35, 2014-Ohio-4278, 21 N.E.3d 290. Costs are taxed to Scaccia.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

———————

Brian D. Weaver, Bar Counsel, for relator.

David P. Williamson, for respondent.