DISCIPLINARY COUNSEL *v.* HENRY.

[Cite as *Disciplinary Counsel v. Henry,* 127 Ohio St.3d 398, 2010-Ohio-6206.]

*Attorneys — Misconduct — Multiple violations of the Rules of Professional Conduct, including failing to act with reasonable diligence in representing a client and failing to promptly refund any unearned fee upon a lawyer's withdrawal from representation of a client — Permanent disbarment.*

(No. 2010-1507 — Submitted October 13, 2010 — Decided December 22, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-040.

_____

**Per Curiam**.

**{¶ 1}** Respondent, James Russell Henry of Gallipolis, Ohio, Attorney Registration No. 0076478, was admitted to the practice of law in Ohio in 2003.

**{¶ 2}** On April 12, 2010, relator, Disciplinary Counsel, filed a nine-count complaint charging respondent with professional misconduct arising from his neglect of client matters, failure to keep clients reasonably apprised about the status of their matters, failure to return unearned fees and client documents, and failure to respond to the resulting disciplinary investigations. The complaint was served by certified mail at respondent's last known address in Cincinnati, Ohio. Respondent did not answer the complaint or otherwise appear in the proceedings, and relator moved for default pursuant to Gov.Bar R. V(6)(F).

**{¶ 3}** A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted relator's motion, making findings of fact and misconduct and recommending that respondent be permanently disbarred from the practice of law in Ohio. The board adopted the master commissioner's report in its entirety. Having reviewed the record, we accept the board's findings

of fact and misconduct and agree that respondent's misconduct warrants permanent disbarment from the practice of law in Ohio.

**Misconduct**

*Count One*

**{¶ 4}** The master commissioner and board found that in May 2008, a father retained respondent to represent him in a custody matter in the Gallia County Court of Common Pleas, Juvenile Division, and paid a $600 retainer. Respondent filed a motion to designate the father as the sole residential parent and legal custodian. When the parties appeared for a hearing in December 2008, they advised the court that they had reached an agreement and that respondent would prepare an entry memorializing the agreement.

**{¶ 5}** When respondent failed to submit the entry in a timely manner, the court set another hearing. The father traveled to Gallia County from his home in Indianapolis for the hearing, only to discover that he was four days early because respondent had given him the wrong date. The court denied respondent's motion for a continuance, and neither the parties nor their counsel appeared at the hearing. The court ordered the parties to submit a motion for final hearing or an agreed entry by a second deadline established by the court, and when the parties failed to do so, the court dismissed the client's motion. It appears, however, that the court later granted the father's pro se motion for immediate or emergency change of custody.

**{¶ 6}** Based upon these findings, the master commissioner and board found that respondent had violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). Because

2

the record clearly and convincingly supports these findings of fact and misconduct, we adopt them.

{¶ 7} The master commissioner and board also found that the father had requested a refund and that the respondent agreed to provide a refund, but he failed to do so. Based upon these findings, the master commissioner and board concluded that respondent had also violated Prof.Cond.R. 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment). The record, however, contains no sworn or certified prima facie evidence to support these findings. See Gov.Bar R. V(6)(F). Therefore, we reject them and dismiss this alleged violation of Prof.Cond.R. 1.16(e) as well as an alleged violation of Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee) that the master commissioner and board had found to be unsupported by the evidence.

*Count Four*

{¶ 8} In March 2009, a woman paid respondent $500 and retained him to assist her in obtaining grandparent visitation rights. On April 6 and May 29, 2009, respondent requested additional fees, and the woman paid him an additional $650. Respondent never completed any work on her behalf. Each time the woman spoke with respondent by telephone, he explained that he was with another client and assured her that he would call her back, but he never did. In November 2009, she discovered that respondent's office telephone number had been disconnected.

{¶ 9} The master commissioner and board found that this conduct violated Prof.Cond.R. 1.3 and 8.4(d). We accept these findings of fact and misconduct.

*Count Five*

{¶ 10} In April 2009, a husband and wife hired respondent to prepare a trust for them. Respondent advised them that the fee for his representation would

be $1,500. On June 1, 2009, the husband paid respondent $750 and signed some papers. In early July, respondent missed a scheduled meeting with the couple and failed to notify them that he would be unable to attend. Two days later, the husband paid respondent $778, representing the remainder of his fee plus filing fees. In late July, respondent arrived two hours late for a meeting at the couple's home. He then told them that he was going to go home, change clothes, and return to meet with them, but he never did. Although the couple tried to call respondent numerous times, his voicemail box was always full. The couple left messages on four occasions when someone did answer respondent's phone, but respondent never returned their calls. Because respondent had not completed the couple's trust documents, they sent him a certified letter terminating his services and asking him to return their documents and money. Respondent received the letter, but he did not comply with the couple's request. The master commissioner and board found that this conduct violated Prof.Cond.R. 1.3, 1.16(d) (requiring a lawyer upon termination of representation to take reasonably practicable steps to protect a client's interest, including giving due notice to the client, allowing reasonable time for employment of other counsel, and delivering to the client all papers and property to which the client is entitled), 1.16(e), 8.4(d), and 8.4(h) but concluded that an alleged violation of Prof.Cond.R. 1.5(a) was not supported by clear and convincing evidence. We accept these findings of fact and misconduct.

*Count Six*

{¶ 11} In February 2009, a father hired respondent to represent him in a custody matter and paid a $750 retainer. The following August, the father paid him an additional $150 to prepare a motion for a protective order.

{¶ 12} Respondent filed a complaint to allocate parental rights and responsibilities on the father's behalf on March 27, 2009. At the conclusion of the August 31, 2009 pretrial, the court ordered respondent to prepare a decision and submit it for the magistrate's signature no later than September 18, 2009. It

appears that respondent did not complete that entry, because the court scheduled the case for mediation in October 2009. Although the court later rescheduled the mediation session for November 2, 2009, respondent did not notify the father of this change. Because respondent failed to complete the objectives of the representation, the father sent him a certified letter requesting a refund. Although respondent received the letter, he did not return the father's money.

{¶ 13} Based upon these findings of fact, the master commissioner and board found, and we agree, that respondent violated Prof.Cond.R. 1.3 and 1.16(e).

### Count Seven

{¶ 14} In February 2007, a man hired respondent to represent him in a case against his former employer and paid a retainer of $2,500. In September 2009, the client attempted to call respondent to discuss the status of the case but discovered that respondent's telephone number had been disconnected. The client has been unable to locate respondent and is unaware of any work that respondent may have done on his behalf.

{¶ 15} Based upon these facts, the master commissioner and board found, and we agree, that respondent violated Prof.Cond.R. 1.3, 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 8.4(d), and 8.4(h).

### Count Eight

{¶ 16} In April 2007, a family met at respondent's office to read a deceased family member's will. At that time, an heir retained respondent to probate the will and paid him $200.

{¶ 17} In May 2008, respondent filed an application to probate the will and an application for authority to administer the estate. He filed the inventory and appraisal the following month, but he did little or no additional work on the matter. In January 2009, the heir spoke with respondent regarding the status of the estate. Respondent indicated that he would complete the matter "this year"

and asked for an additional $1,500. The heir sent him a cashier's check for that amount and never heard from him again.

{¶ 18} Although the heir attempted to call respondent's office, he was never there. When the heir stopped at respondent's office in September 2009, he was advised that respondent was out of the office "indefinitely." The heir eventually contacted another attorney, who advised him that respondent should not have been paid for the administration of the decedent's estate until it was completed. See Sup.R. 71(B).

{¶ 19} The master commissioner and board found that respondent's conduct with respect to this count violated Prof.Cond.R. 1.3, 1.5(a), 8.4(d), and 8.4(h). We accept these findings of fact and misconduct.

*Count Nine*

{¶ 20} In February 2009, a woman retained respondent to represent her in the probate of her deceased husband's estate. At that time, she paid a $500 retainer and gave respondent numerous original documents, including vehicle titles, property deeds, bank records, and her husband's death certificate.

{¶ 21} After trying to reach respondent for several weeks, the woman met with him on April 10, 2009. He had not prepared any of the estate documents but asked the woman to sign blank documents, which he assured her he would complete and file in the next two weeks.

{¶ 22} When the woman had not heard from respondent after five weeks, she began to call him. When she finally reached him on May 21, 2009, he apologized for not having the matter completed and promised he would take action by the second week of June. He made a similar promise in July. When the woman called in mid-September, she was told that he would not be in the office that week. She tried to call him several times after that, but his phone went unanswered. When the woman attempted to retrieve her paperwork from respondent's office in December 2010, she discovered that his office was no

longer there. She averred that respondent still has all of the documents for the estate and that she cannot afford to hire another attorney to handle the matter.

{¶ 23} The master commissioner and board found that respondent had accepted attorney fees for handling the estate in violation of Sup.R. 71(B), performed little if any work on the estate, retained the woman's original documents, and closed his office without providing any notice to her.

{¶ 24} Having made these factual findings, the master commissioner and board concluded, and we agree, that respondent's conduct violated Prof.Cond.R. 1.3, 1.5(a), 1.16(d), 1.16(e), 8.4(d), and 8.4(h).

*Counts Two and Three*

{¶ 25} Because relator was unable to obtain affidavits from the grievants involved in Counts Two and Three of the complaint, he has withdrawn the allegations of misconduct associated with respondent's representation of those former clients. Because respondent failed to respond to relator's inquiries regarding those grievances, however, allegations of respondent's failure to cooperate in these disciplinary investigations remain.

*Failure to Cooperate*

{¶ 26} Of the 11 letters of inquiry that relator sent by certified mail from September 1, 2009, to December 28, 2009, respondent received the first four. The remaining certified letters were returned to relator marked unclaimed. Despite having received four letters of inquiry, respondent never responded to the complaints lodged against him.

{¶ 27} In early January 2010, respondent called to advise relator that he was in a rehabilitation program in Cincinnati, Ohio. At respondent's request, relator sent copies of each of the grievances to respondent in Cincinnati on January 4, 2010, followed by another letter on January 13, 2010, but respondent did not respond to either letter.

{¶ 28} On February 25, 2010, relator sent respondent a notice of intent to file its formal complaint by certified and regular mail to the address on file with the Office of Attorney Services, as well as to the Cincinnati address that respondent had provided to the investigator, but the certified letters were returned unclaimed. The board issued a notice of the filing of the complaint to respondent by certified mail on April 12, 2010. The certified-mail receipt indicates that the letter was delivered. Before filing his default motion, relator attempted to reach respondent by mail, e-mail, and telephone.

{¶ 29} Despite relator's numerous efforts to communicate with respondent, he did not answer the complaint or respond to the default motion. Therefore, the master commissioner concluded that his conduct violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation) with respect to each of the nine counts. The board accepted these findings, except that it did not find violations of Prof.Cond.R. 8.1(b) with respect to Counts Two and Three. The evidence, however, clearly and convincingly demonstrates that respondent has knowingly failed to respond to relator's demand for information during the investigation of each count alleged in the complaint, as charged by relator. Therefore, we conclude that respondent has violated both Prof.Cond.R. 8.1(b) and Gov.Bar R. V(4)(G) with respect to each of the nine counts discussed herein.

### Sanction

{¶ 30} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors

listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 31} The evidence submitted with respondent's motion for default clearly and convincingly demonstrates that respondent has failed to act with reasonable diligence in representing multiple clients over a period of approximately three years, has failed to keep two clients reasonably informed about the status of a legal matter, has failed to return unearned fees, has twice failed to return papers and property to his clients upon the termination of his representation, and has charged a clearly excessive fee. Moreover, he has knowingly failed to respond to nine separate disciplinary investigations. Through his actions and his inaction, he has engaged in conduct that is prejudicial to the administration of justice and adversely reflects on his fitness to practice law.

{¶ 32} As aggravating factors, the board found that respondent has engaged in a pattern of misconduct involving multiple offenses. BCGD Proc.Reg. 10(B)(1)(c) and (d). He has failed to cooperate in the disciplinary process, has refused to acknowledge the wrongful nature of his misconduct, and has caused harm to vulnerable clients. BCGD Proc.Reg. 10(B)(1)(e), (g), and (h). Furthermore, he has failed to return unearned fees to his former clients. BCGD Proc.Reg. 10(B)(1)(i). The sole factor in mitigation is respondent's lack of a prior disciplinary record. BCGD Proc.Reg. 10(B)(2)(a). While the board found that respondent has claimed to suffer from a chemical dependency, it observed that the record contains no competent medical evidence to establish a diagnosed chemical dependency, let alone a causal connection between the condition and respondent's misconduct. Therefore, the board accorded no mitigating effect to this purported chemical dependency. See BCGD Proc.Reg. 10(B)(2)(g). Moreover, we observe that relator's investigator has averred only that respondent "called to advise [him]

that he was in a rehabilitation program in Cincinnati, Ohio" and that there is no evidence in the record to prove what type of rehabilitation program that was.

**{¶ 33}** Relator argued and the master commissioner and board agreed that disbarment is the appropriate sanction for respondent's misconduct. This sanction is consistent with our precedent, which holds that the presumptive sanction for attorneys who accept retainers and then fail to carry out contracts of employment is disbarment. *Columbus Bar Assn. v. Moushey*, 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16. This is so because "[t]aking retainers and failing to carry out contracts of employment is tantamount to theft of the fee from the client." *Cincinnati Bar Assn. v. Weaver*, 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 16. As in *Weaver*, respondent's pattern of neglect and failure to perform as promised, followed by his failure to return unearned fees and client documents and his complete disregard for the ensuing disciplinary proceedings, warrants his permanent disbarment.

**{¶ 34}** Accordingly, James Russell Henry is permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

_____