Per Curiam.
*67 {¶ 1} Respondent, Justin Enrique Fernandez, of Cincinnati, Ohio, Attorney Registration No. 0062974, was admitted to the practice of law in Ohio in 1994. On September 1, 2016, we publicly reprimanded Fernandez for his failure to provide sufficient information to his client to permit her to make informed decisions about his plans to achieve her legal objectives. Cincinnati Bar Assn. v. Fernandez , 147 Ohio St.3d 329, 2016-Ohio-5586, 65 N.E.3d 724.
{¶ 2} In a formal complaint certified to the Board of Professional Conduct on October 4, 2016, relator, Cincinnati Bar Association, charged Fernandez with multiple violations of the Rules of Professional Conduct arising from his neglect of three client matters, his retention of fees paid by those clients, the overdraft of his client trust account, and his failure to respond to the ensuing disciplinary investigations.
*68 {¶ 3} The parties submitted stipulations of fact and misconduct, stipulations of aggravating and mitigating factors, and three exhibits. Fernandez was the only witness to testify at his hearing before a panel of the board. The panel issued a report in which it made findings of fact, found that Fernandez had committed all but one of the alleged violations, and recommended that he be indefinitely suspended from the practice of law, with certain conditions placed on his reinstatement.[1] The board adopted the panel's findings and recommended sanction.
{¶ 4} Fernandez objects and urges us to reject the board's finding that he acted with a dishonest or selfish motive. Consistent with the recommendation made by relator, he asks us to attribute mitigating effect to his intermittent homelessness and unspecified mental disorders and suspend him from the practice of law for one year.
{¶ 5} Having reviewed the record, we adopt the board's findings of fact and misconduct, findings of aggravating and mitigating factors, and recommended sanction. Therefore, we indefinitely suspend Fernandez from the practice of law in Ohio and impose conditions on his reinstatement.
Misconduct
{¶ 6} Between April and June 2015, Fernandez agreed to assist Cleora Jean Smith and Betty Smith Carpenter with the settlement *379 of their debts and to file a Chapter 7 bankruptcy on behalf of Eddie and Amie Foster. As in Fernandez's prior disciplinary case, these clients were referred to him by Morgan Drexen, Inc., a now defunct California company that provided paralegal and paraprofessional services to his law practice. Fernandez stipulated that Morgan Drexen assisted him in performing "non-formal debt resolution" for his clients.
{¶ 7} In April 2015, the United States District Court for the Central District of California enjoined Morgan Drexen's business operations and froze its assets. Soon thereafter, Morgan Drexen filed for bankruptcy and went out of business. In July 2015, Morgan Drexen's clients were sent letters informing them that Morgan Drexen had filed for bankruptcy and that the attorney who represented them was no longer affiliated with the company. The letters stated, "All administrative and support services will now be provided directly by employees of the law firm you hired to represent you" and "[r]est assured, none of your money is affected by Morgan Drexen's bankruptcy because your lawyers, not Morgan Drexen are responsible for [electronically transferring funds from] your account and holding your money in trust." Those letters were sent on the letterhead of *69 Howard Law, P.C., which bore the California mailing address that Morgan Drexen had used for Fernandez.
{¶ 8} The board found that Fernandez had received $926 from Cleora Jean Smith, $2,618 from Betty Smith Carpenter, and $900 from Eddie and Amie Foster to secure his legal services. Fernandez failed to respond to their efforts to communicate with him, and he confirmed that his voicemail prompt instructed his clients to leave no more than one message per week due to his work volume. Not only did he fail to perform any legal services for these three clients, he failed to advise the Fosters that they were ineligible to file bankruptcy because their previous one was so recent. Moreover, he failed to refund any money to these four clients.
{¶ 9} On October 19, 2015, relator received a notice from U.S. Bank that one of Fernandez's client trust accounts was overdrawn. In response to that notice and several client grievances, relator sent multiple letters of inquiry to Fernandez by regular and certified mail. Fernandez did not respond to relator's requests for information.
{¶ 10} The parties stipulated and the board found that Fernandez's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation), 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), 2.1 (requiring a lawyer to exercise independent judgment and render candid advice while representing the lawyer's clients), and 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information from a disciplinary authority during an investigation). In addition, the parties stipulated and the board found that Fernandez's conduct with respect to his client trust account violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds belonging to a client or third party in a client trust account separate from his own property and to maintain certain records regarding the funds held in that account) and that his failure to respond to relator's inquiries regarding the overdraft of his client trust account constituted *380 an additional violation of Prof.Cond.R. 8.1(b).
{¶ 11} We accept the board's findings of fact and misconduct.
Recommended Sanction
{¶ 12} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating *70 and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.
{¶ 13} The parties stipulated and the board found that four aggravating factors are present-that Fernandez has a prior disciplinary record, engaged in a pattern of misconduct, committed multiple offenses, and caused harm to his clients, who the board found were particularly vulnerable and in dire need of protection from creditors. See Gov.Bar R. V(13)(B)(1), (3), (4), (8).
{¶ 14} The board rejected the parties' stipulation to two mitigating factors-that Fernandez did not act with a selfish or dishonest motive and that he practiced for more than 20 years without incident before being publicly reprimanded in September 2016. Instead, it found as additional aggravating factors that Fernandez had acted with a selfish and dishonest motive and "utterly failed to respond or cooperate in any way with Relator's investigation of this matter." See Gov.Bar R. V(13)(B)(2) and (5). The board also expressed its view that Fernandez's apparent cooperation after relator filed its complaint should not "ameliorate his willful refusal to respond" to relator's investigation.
{¶ 15} The board rejected relator's recommendation that Fernandez be suspended from the practice of law for one year as being "woefully inadequate to protect the public." Instead, the board found that Fernandez had accepted payments from clients and had then failed to perform any work, conduct that is tantamount to theft, for which the presumptive sanction is disbarment. See , e.g. , Disciplinary Counsel v. Horan , 123 Ohio St.3d 60, 2009-Ohio-4177, 914 N.E.2d 175, ¶ 22-23. Alternatively, the board noted that this matter could also be viewed as one in which an attorney had neglected entrusted legal matters and compounded that misconduct by failing to cooperate in the ensuing disciplinary investigation. The presumptive sanction for such offenses is an indefinite license suspension. See , e.g. , Mahoning Cty. Bar Assn. v. DiMartino , 145 Ohio St.3d 391, 2016-Ohio-536, 49 N.E.3d 1280, ¶ 13-14 ; Disciplinary Counsel v. Golden , 97 Ohio St.3d 230, 2002-Ohio-5934, 778 N.E.2d 564, ¶ 23.
{¶ 16} The board acknowledged Fernandez's testimony that he suffered from mental-health issues and that when he sought the assistance of the Ohio Lawyers Assistance Program ("OLAP"), its professionals recommended that he seek inpatient treatment for those conditions. While the board was sensitive to the possibility that Fernandez may, in fact, be suffering from significant mental or physical illnesses that could affect his ability to practice law in a competent, ethical, and professional manner, it also noted that Fernandez chose not to obtain the recommended treatment for financial reasons. In the absence of medical evidence to substantiate Fernandez's claimed mental disorder as a mitigating factor pursuant to Gov.Bar R. V(13)(C)(7), the board found only that the possibility of its existence rendered the sanction of permanent disbarment "too *71 harsh."[2] The *381 board therefore recommended that we indefinitely suspend Fernandez from the practice of law, order him to make restitution to the affected clients, and place certain conditions on Fernandez's reinstatement.
Objection to the Recommended Sanction
{¶ 17} Fernandez objects to the board's finding that he acted with a dishonest and selfish motive and argues that the finding is contradicted by his own testimony regarding his gambling addiction and other unspecified and untreated mental disorders. He urges us to take judicial notice that a homeless attorney is likely to have impaired judgment and that poor decision-making, not selfishness or dishonesty, caused his behavior. Based on the remaining evidence, Fernandez contends that the appropriate sanction for his misconduct is a one-year suspension. We disagree.
{¶ 18} Despite Fernandez's claims, we find that the record amply demonstrates that he acted with a selfish motive. His business relationship with Morgan Drexen was driven to maximize profit with high-volume representation by using paraprofessionals to perform much of the work with minimal attorney oversight. Fernandez testified that after entering into a business relationship with Morgan Drexen, he typically had between 100 and 400 clients-as a sole practitioner. He relied on Morgan Drexen to communicate with his clients and admitted that he had had no personal contact with Cleora Jean Smith ten months after he commenced her representation. He took his clients' money, relied on Morgan Drexen to do the work, and failed to adequately monitor the status of his clients' legal matters.
{¶ 19} When asked if it was possible that there were other clients for whom he charged fees that were not earned, Fernandez stated that he could not give a definitive answer, explaining, "[O]ne of the weak points of the Morgan Drexen interaction with attorneys was attorneys were heavily dependent on the software and information systems and the paraprofessionals that they put together; and I don't-well, I haven't ever really closely reviewed any of the software data to see what was done and what wasn't done." Ultimately, he admitted that he had just taken on too many clients.
{¶ 20} Even more troubling than Fernandez's lax oversight of his clients' legal matters was his testimony regarding the management of the client trust account *72 that Morgan Drexen had established for him. Although Fernandez claimed that the account was his, when he was questioned about who had signature authority for the account, he responded, "Well, I definitely should have had signature authority, but I-I-I hope it doesn't turn out that there's other signature authority there. It should have been mine alone." When asked how he got paid, however, Fernandez suggested that others had signature authority for the account, explaining that when a client made a payment, his "paraprofessionals at Morgan Drexen should put the money in the trust account; and then, as the fees are earned, withdraw that money, put [it] in the general business account, and pay [him] from the general business account." But Fernandez ultimately admitted that he did not know how the money moved because he never reviewed the banking records. His misconduct is far more serious than his neglect of three *382 client matters, his failure to refund unearned fees, and his failure to maintain required trust-account records, because he completely abdicated his duty to safeguard the client funds entrusted to his care.
{¶ 21} At the panel hearing, Fernandez testified that he "was having some mental health issues" and had lost his home to foreclosure the year before the charged misconduct began. He has also admitted that he has a gambling problem and that his problems are not of a short-term or acute character but rather that they have resulted in "repeated bouts of homelessness." He has presented no evidence that those issues have been diagnosed by a qualified healthcare professional, that they contributed to his misconduct, that he has achieved a sustained period of successful treatment, or that he has received a prognosis from a qualified healthcare professional that he will be able to return to the competent, ethical professional practice of law. See Gov.Bar R. V(13)(C)(7). Furthermore, at oral argument, Fernandez confirmed that he had received no treatment for those issues-despite OLAP's recommendation that he seek inpatient treatment-and he suggested that if he were not living with a friend, he would still be homeless.
{¶ 22} Despite Fernandez's argument, we find that the record plainly demonstrates that he acted with a selfish-though perhaps not dishonest-motive and that his lax business practices, poor judgment, and mental-health issues present an ongoing danger to the public. We are not unsympathetic to Fernandez's plight, but given the seriousness of his misconduct and the significant effects he admits that his untreated mental-health issues have had on the management of his personal affairs, we are convinced that an indefinite suspension with conditions for reinstatement, followed by a period of monitored probation once he is reinstated, is the appropriate sanction in this case.
{¶ 23} Accordingly, Justin Enrique Fernandez is indefinitely suspended from the practice of law in Ohio, and any reinstatement shall be subject to the following conditions: that he (1) submit proof, within 60 days of our order, that he *73 has made restitution of $926 to Cleora Jean Smith, $2,618 to Betty Smith Carpenter, and $900 to Eddie and Amie Foster, (2) complete 12 hours of continuing legal education with an emphasis on law-office and client-trust-account management, in addition to the requirements of Gov.Bar R. X, (3) submit to an evaluation by a qualified healthcare professional to investigate the possible existence of a disorder as defined in Gov.Bar R. V(35) and comply with any treatment recommendations made as a result of that evaluation, and (4) show evidence that he has not engaged in further misconduct. Upon reinstatement, Fernandez is to serve a two-year term of monitored probation in accordance with Gov.Bar R. V(21). Costs are taxed to Fernandez.
Judgment accordingly.
O'Connor, C.J., and French, Hall, and Fischer, JJ., concur.
Kennedy, J., dissents, with an opinion joined by O'Donnell and DeWine, JJ.
Michael T. Hall, J., of the Second District Court of Appeals, sitting for O'Neill, J.

The panel unanimously dismissed an alleged violation of Prof.Cond.R. 5.3(b) (requiring a lawyer who employs and has direct supervisory authority over a nonlawyer to make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer).

Gov.Bar R. V(13)(C)(7) provides that a mental-health disorder qualifies as a mitigating factor when all the following factors exist: (a) a diagnosis of a disorder by a qualified healthcare professional, (b) a determination that the disorder contributed to the respondent's misconduct, (c) a sustained period of successful treatment, and (d) a prognosis from a qualified healthcare professional that the attorney will be able to return to the competent, ethical professional practice of law under specified conditions.