**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Vick***, Slip Opinion No. 2022-Ohio-2541.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-2541

DISCIPLINARY COUNSEL *v*. VICK.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Vick*, Slip Opinion No. 2022-Ohio-2541.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failure to act with reasonable diligence, failure to promptly refund unearned fees upon withdrawal from employment, knowingly failing to respond to a demand for information by a disciplinary authority, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Indefinite suspension from the practice of law and restitution ordered.*

(No. 2021-1515—Submitted February 8, 2022—Decided July 27, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-050.

_____

**Per Curiam.**

{¶ 1} Respondent, Gary Allen Vick Jr., of Parma, Ohio, Attorney Registration No. 0071495, was admitted to the practice of law in Ohio in 1999. In an August 2021 second amended complaint, relator, disciplinary counsel, alleged that among other things, Vick had neglected the legal matters of six clients, failed to reasonably communicate with those clients, failed to refund their unearned fees, lied to at least one of them, and then failed to cooperate in three of the ensuing disciplinary investigations.

{¶ 2} The parties entered into comprehensive stipulations of fact, misconduct, and aggravating and mitigating factors, and they submitted 68 stipulated exhibits. On the morning of his scheduled hearing before a three-member panel of the Board of Professional Conduct, Vick emailed relator's counsel to inform her that he was "unable" to attend. He offered no explanation for his absence; nor did he request a continuance. The matter was submitted to the panel on the stipulations. The panel chair granted the parties two weeks to submit posthearing briefs on a recommended sanction. Vick sought and received an extension to file his brief but did not ultimately submit anything.

{¶ 3} The panel and board issued reports finding that Vick had committed most of the charged misconduct, but they recommended that one alleged violation be dismissed for insufficient evidence. Based on those findings, they recommended that Vick be indefinitely suspended from the practice of law, that he be ordered to make restitution to his former clients, and that certain conditions be placed on his reinstatement to the profession. We granted Vick's request for an extension of time to file objections to the board's report; however, no objections have been filed. Based on our review of the record and our precedent, we adopt the board's findings of misconduct and recommended sanction.

## Misconduct

### *Counts I, III, IV, and V—The Dubbs, Dreher, Loifer, and Rerko Matters*

{¶ 4} Between July 2018 and April 2020, Vick agreed to represent five clients—Joseph Dubbs, Mark and Donna Dreher, Maxim Loifer, and Alison Rerko—in various legal matters. He accepted retainers ranging from $1,000 to $5,000 from those clients but failed to deposit them into his client trust account even though he had performed little or no work on the clients' legal matters.

{¶ 5} For example, Vick drafted a civil complaint in Loifer's legal matter and sent him a message stating that he had mailed it to the court, but Vick has stipulated that he neither mailed nor filed that claim on Loifer's behalf. He also drafted an affidavit in support of a Civ.R. 60(B) motion for relief from judgment for Dubbs and sent a letter on behalf of the Drehers, but he never took any other action in their legal matters. Vick has admitted that he performed no legal work on Rerko's behalf.

{¶ 6} Vick communicated periodically, but not consistently, with his clients about their cases. Some of those communications served only to inform his clients that he was busy in court and that he would call or meet with the client later—more often than not, he failed to follow through on those promises. On one occasion, Vick explained a seven-week gap in his communication with a client by claiming that he had been sick for two weeks with "chest crap."

{¶ 7} Vick eventually ceased all communications with Dubbs, the Drehers, Loifer, and Rerko and failed to respond to their requests that he refund their unearned retainers.

{¶ 8} Relator served Vick with at least two letters of inquiry regarding each of the grievances filed by Dubbs, the Drehers, and Loifer—typically by email or taping a letter to the front door of his residence. On one occasion, Vick requested and received additional time to respond to a grievance. But he never submitted a written response to these grievances and twice failed to comply with subpoenas

ordering him to appear for his deposition. Two days before the hearing in this matter, Vick signed stipulations regarding all of the grievances at issue in this case. In those stipulations, Vick admitted that he had never issued refunds to the affected clients and that he owes each of them restitution of their full retainer.

{¶ 9} Based on the foregoing, the parties stipulated and the board found that Vick's conduct in each of these four client matters violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), and 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment)—although the board report mistakenly identified one of the Prof.Cond.R. 1.16(e) violations as a Prof.Cond.R. 1.16(d) violation. In addition, the parties stipulated and the board found that Vick violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation) in the Dubbs, Dreher, and Loifer matters.

{¶ 10} The parties also stipulated that Vick had violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) in the Loifer and Rerko matters. Although the board agreed that Vick had violated that rule in Loifer's case by falsely telling Loifer that his complaint had been mailed to the court, it has recommended that we dismiss the alleged violation with respect to the Rerko matter (Count V) for insufficient evidence.

**{¶ 11}** We accept the board's findings of misconduct with respect to each of these counts and dismiss the alleged violation of Prof.Cond.R. 8.4(c) with respect to Count V.

*Count II—The Griffin Matter*

**{¶ 12}** Sean Griffin hired Vick to represent him in a civil matter regarding vehicle repairs. In November 2018, Vick filed a complaint on Griffin's behalf in the Cuyahoga County Court of Common Pleas. The court notified counsel for both parties that it had scheduled a case-management conference for January 8, 2019, but Vick did not inform Griffin or appear at the conference. Consequently, the court dismissed Griffin's complaint without prejudice.

**{¶ 13}** Vick refiled the complaint in mid-January 2019, without notifying Griffin of the dismissal or refiling. Vick attended a March 2019 case-management conference during which the court ordered the parties to complete discovery by May 20, 2019. Defense counsel served Vick with interrogatories, requests for production of documents, and a notice to take Griffin's deposition—but Vick did not inform Griffin that he had received those documents. Vick did not respond to the discovery requests and neither he nor Griffin appeared for the noticed deposition.

**{¶ 14}** On April 29, defense counsel filed a motion to dismiss the case with prejudice for failure to prosecute and, in the alternative, a motion to compel discovery and for sanctions. The court ordered Vick to comply with all outstanding discovery requests on or before May 3, and to arrange for Griffin's deposition to be taken on or before May 13.

**{¶ 15}** On Saturday, May 4, at 12:30 a.m., Vick emailed discovery responses to defense counsel and suggested that they talk about deposition dates and a possible resolution of the case. At 7:39 a.m. that day, defense counsel responded, stating that he had already proposed dates for Griffin's deposition and that Vick's discovery responses were incomplete and missing referenced

photographs. He asked that Vick provide complete responses by Monday, May 6. Vick replied, "Will do Todd. There are not many photographs. Maybe 5 I believe."

{¶ 16} Having received no further response from Vick, defense counsel filed a supplemental motion for dismissal with prejudice on May 13. However, that same day, Vick filed a notice of voluntary dismissal without Griffin's knowledge or consent. The court acknowledged that the action had been dismissed without prejudice and declared defense counsel's motion moot.

{¶ 17} Several days later, defense counsel filed a second motion for sanctions, claiming that Griffin and Vick's conduct—including their failure to comply with the court's discovery orders—had caused unnecessary delay and needlessly increased the defendant's attorney fees and litigation expenses. Vick did not inform Griffin about the hearing on that motion, but Griffin learned about it from other sources and both of them attended the hearing. During the hearing, Vick apologized to the court, noting that he had had "some very significant family issues that [he] did not deal with properly." The court found that Vick had shown no courtesy to the defense and admonished him that there were a number of ways that he could have "stopped the bleeding"—including seeking extensions of time, dismissing the case without prejudice, or withdrawing—but that he "just chose not to stop it." The court granted the defendant's motion for sanctions and ordered Vick and Griffin to pay $3,385 in attorney fees and costs occasioned by their failure to cooperate.

{¶ 18} Shortly thereafter, Griffin retained new counsel, who requested that Vick turn over Griffin's file and the name of his legal-malpractice insurer. Vick did not respond to those inquiries, nor did he carry legal-malpractice insurance at that time. In July 2019, Vick appealed the trial court's sanction order on Griffin's behalf without informing him. The court of appeals affirmed the judgment. *Griffin v. Churneys Bodyworks, Inc.*, 8th Dist. Cuyahoga No. 108782, 2020-Ohio-3889.

**{¶ 19}** Griffin later filed a legal-malpractice complaint against Vick. In October 2019, Griffin obtained a default judgment for $42,790.82, which included the $3,385 in sanctions that he was ordered to pay as a result of Vick's neglect. At the time of Vick's disciplinary hearing, he had not satisfied that judgment.

**{¶ 20}** The parties stipulated and the board found that Vick's misconduct violated Prof.Cond.R. 1.3, 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(a)(3), 1.16(d) (requiring a lawyer to promptly deliver client papers and property as part of the termination of representation), 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), 3.4(d) (prohibiting a lawyer from intentionally failing to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We accept these findings of misconduct.

### Sanction

**{¶ 21}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 22}** In this case, the parties stipulated and the board found that six aggravating factors are present—Vick acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, failed to cooperate in the disciplinary process, caused harm to vulnerable victims, and failed to make restitution. *See* Gov.Bar R. V(13)(B)(2) through (5), (8), and (9). Vick's clean disciplinary record is the only mitigating factor. *See* Gov.Bar R. V(13)(C)(1).

**{¶ 23}** Relator filed a posthearing brief recommending that Vick be permanently disbarred for his misconduct. Although Vick was directed to file a

posthearing brief and was granted an extension of time to do so, he did not file a brief or otherwise propose a sanction for his stipulated misconduct.

{¶ 24} Relator cited three cases to support its recommendation of permanent disbarment: *Cleveland Metro. Bar Assn. v. Freeman*, 128 Ohio St.3d 421, 2011-Ohio-1483, 945 N.E.2d 1034, *Disciplinary Counsel v. Henry*, 127 Ohio St.3d 398, 2010-Ohio-6206, 939 N.E.2d 1255, and *Warren Cty. Bar Assn. v. Marshall*, 121 Ohio St.3d 197, 2009-Ohio-501, 903 N.E.2d 280. The board acknowledged that like Vick, the attorneys in each of those cases agreed to represent clients, failed to perform the requested legal services, failed to refund unearned fees, and failed to cooperate in the ensuing disciplinary investigations. However, the board distinguished *Freeman* and *Henry* from this case on the ground that they involved entry of default judgments against the respondents; *Freeman* also involved many more counts and allegations of misconduct.

{¶ 25} While the board found that the facts of *Marshall* were more analogous to the facts in this case, it found seven other cases involving indefinite suspensions for similar acts of misconduct to be more instructive. For example, in *Lorain Cty. Bar Assn. v. Johnson*, 151 Ohio St.3d 448, 2017-Ohio-6869, 90 N.E.3d 837, an attorney neglected at least ten client matters, failed to reasonably communicate with multiple clients, failed to refund unearned fees upon the termination of his representation, and failed to cooperate in the ensuing disciplinary investigations. Although we did not find that Johnson violated Prof.Cond.R. 8.4(c), as Vick did here, Johnson failed to prepare a closing statement for a contingent-fee client and entered into a fee-sharing arrangement with a lawyer from another firm without obtaining his client's informed written consent. He also failed to account for more than $12,000 in settlement funds that had been entrusted to him on behalf of one client, although the relator withdrew its request for restitution in that matter because Johnson's trust-account records were insufficient to establish the amount that the client was entitled to receive.

**{¶ 26}** The aggravating factors in *Johnson* were identical to those in this case. And in mitigation, Johnson, like Vick, did not have a prior disciplinary record. We indefinitely suspended Johnson and ordered him to pay restitution of approximately $13,000 to 15 former clients.

**{¶ 27}** In several of the other cases cited by the board, we acknowledged that the attorneys' conduct in accepting payments from clients and then failing to perform any work "is tantamount to theft, for which the presumptive sanction is disbarment." *See Cincinnati Bar Assn. v. Fernandez*, 155 Ohio St.3d 67, 2018-Ohio-3828, 119 N.E.3d 377, ¶ 15, citing *Disciplinary Counsel v. Horan*, 123 Ohio St.3d 60, 2009-Ohio-4177, 914 N.E.2d 175, ¶ 22-23; *see also Disciplinary Counsel v. Tyack*, 107 Ohio St.3d 35, 2005-Ohio-5833, 836 N.E.2d 568, ¶ 30, citing *Columbus Bar Assn. v. Moushey*, 104 Ohio St.3d 427, 2004-Ohio-6897, 819 N.E.2d 1112, ¶ 16. But we also acknowledged that those cases could be viewed as matters in which the attorneys had neglected entrusted legal matters and compounded their misconduct by failing to cooperate in the ensuing disciplinary investigations—for which the presumptive sanction is an indefinite suspension. *See Fernandez* at ¶ 15, citing *Mahoning Cty. Bar Assn. v. DiMartino*, 145 Ohio St.3d 391, 2016-Ohio-536, 49 N.E.3d 1280, ¶ 13-14, and *Disciplinary Counsel v. Golden*, 97 Ohio St.3d 230, 2002-Ohio-5934, 778 N.E.2d 564, ¶ 23; *Tyack* at ¶ 30, citing *Disciplinary Counsel v. Treneff*, 104 Ohio St.3d 336, 2004-Ohio-6562, 819 N.E.2d 695, ¶ 16. In one of those cases, the board found that the possibility that the attorney had a mental disorder—though he had not submitted medical evidence to substantiate the claimed disorder as a mitigating factor—"rendered the sanction of permanent disbarment 'too harsh.' " *Fernandez* at ¶ 16.

**{¶ 28}** In this case, Vick did not present any evidence of a mitigating mental or substance-use disorder to relator or the panel. *See* Gov.Bar R. V(13)(C)(7). But the board noted that in the course of these disciplinary proceedings, Vick's former counsel had expressed concerns regarding Vick's mental health, given the nature

of the allegations in the complaint and Vick's pattern of delay and obfuscation.  On relator's motion, the board ordered Vick to submit to an independent psychiatric examination pursuant to Gov.Bar R. V(15)(C).  Vick cooperated with that examination and reported that mild depressive and anxiety symptoms may have contributed to his misconduct.  However, the examining psychiatrist determined that those symptoms were not so severe as to substantially impair Vick's ability to practice law and stated that any mitigating effect of those conditions was beyond the scope of his evaluation.

**{¶ 29}** The board, however, recognized that Vick had practiced law for more than 20 years with no prior discipline before the "sudden emergence" of the five client grievances at issue in this case.  Believing that some event may have triggered Vick's misconduct, even if it did not constitute a substantial impairment to Vick's ability to practice law, the board recommends that we indefinitely suspend—rather than permanently disbar—Vick from the practice of law in Ohio.  In addition, the board recommends that Vick be required to make full restitution to the clients affected by his misconduct within 90 days of our final disciplinary order and that, as conditions of his reinstatement to the practice of law, he be required to complete additional continuing legal education ("CLE") focused on law-office and client-trust-account management and be required to work with a monitoring attorney for two years following his reinstatement.

**{¶ 30}** After a thorough review of the record and our precedent, we agree that the proper sanction for Vick's misconduct is an indefinite suspension coupled with the requirements that he make restitution to his clients and comply with the additional conditions recommended by the board.

### Conclusion

**{¶ 31}** Accordingly, Gary Allen Vick Jr. is indefinitely suspended from the practice of law in Ohio and ordered to make restitution within 90 days of this order as follows:  $3,500 to Joseph Dubbs; $3,385 to Sean Griffin; $3,500 to Mark and

Donna Dreher; $1,025 to Maxim Loifer; and $5,000 to Alison Rerko.[1]  In addition to the requirements for reinstatement set forth in Gov.Bar R. V(25) and the CLE requirements of Gov.Bar R. X, Vick shall be required to complete 12 hours of CLE with an emphasis on law-office and client-trust-account management.  Upon reinstatement and for a period of two years thereafter, Vick shall work with a monitoring attorney appointed by relator to ensure his compliance with the Rules of Professional Conduct related to maintaining communication with clients, completing tasks for clients in a diligent and competent manner, and proper handling of client funds.  Costs are taxed to Vick.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

———————————

Joseph M. Caligiuri, Disciplinary Counsel, and Michelle R. Bowman and Kelli C. Schmidt, Assistant Disciplinary Counsel, for relator.

Gary Allen Vick Jr., pro se.

———————————

---

1. Vick stipulated that the Drehers paid him a retainer of $3,500 and that they later paid another attorney $2,679 in legal fees and costs to resolve their case.  He also stipulated that he should make restitution of both amounts to the Drehers.  However, the board recommended that Vick only make restitution of the $2,679 they paid the other attorney to resolve their case.  In accord with the board's recommendation that Vick's other clients receive the full amount of their retainer as restitution, we conclude that the Drehers are also entitled to restitution of their full $3,500 retainer rather than the $2,679 they paid to the other attorney.