**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Ford*, **Slip Opinion No. 2020-Ohio-998.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-998

DISCIPLINARY COUNSEL *v*. FORD.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Ford*, Slip Opinion No. 2020-Ohio-998.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and the Rules for the Government of the Bar—Indefinite suspension.*

(No. 2019-1367—Submitted November 13, 2019—Decided March 19, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-066.

_____

**Per Curiam.**

{¶ 1} Respondent, Elizabeth Lorraine Ford, of Cincinnati, Ohio, Attorney Registration No. 0068502, was admitted to the practice of law in Ohio in 1997. Based on her failure to register as an attorney for the 2005/2007 biennium, we suspended her from the practice of law from December 2, 2005, until January 17, 2007. *See In re Attorney Registration Suspension of Ford*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671; *In re Reinstatement of Ford*, 113 Ohio St.3d

1425, 2007-Ohio-1313, 863 N.E.2d 644. On November 1, 2019, we suspended Ford for her failure to register for the 2019/2021 biennium; that suspension remains in effect. *See In re Attorney Registration Suspension of Ford*, 157 Ohio St.3d 1472, 2019-Ohio-4529, 134 N.E.3d 183.

{¶ 2} In a formal complaint filed with the Board of Professional Conduct on November 30, 2018, relator, disciplinary counsel, charged Ford with committing professional misconduct in her representation of four separate clients. Relator primarily alleged that Ford failed to comply as soon as practicable with her clients' reasonable requests for information, failed to deposit unearned fees into a client trust account separate from her own property, engaged in dishonesty, fraud, deceit, or misrepresentation, and failed to cooperate in the ensuing disciplinary investigations.

{¶ 3} The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors and submitted 37 stipulated exhibits. Following Ford's testimony at a hearing before a panel of the board, both parties submitted additional evidence on the issue of restitution. The board issued a report finding that Ford committed the stipulated misconduct and engaged in dishonest conduct during the disciplinary proceeding and recommending that we indefinitely suspend her from the practice of law in Ohio. No objections have been filed.

{¶ 4} We adopt the board's findings of misconduct and agree that an indefinite suspension is the appropriate sanction for Ford's misconduct.

**Misconduct**

*The Hingsbergen Matter*

{¶ 5} In March 2016, Ford agreed to represent Shelly Hingsbergen in her divorce. Hingsbergen paid $2,000 of the agreed $3,000 flat fee, and Ford cashed the check the same day. Since at least 2014, Ford had not maintained a client trust account and had been depositing her clients' advanced fees and expenses into her husband's personal checking account.

{¶ 6} Ford drafted a separation agreement and shared-parenting plan for Hingsbergen. She purportedly sent Hingsbergen the documents in August 2016, but Hingsbergen did not receive them until October. In April 2017, having had little or no further contact from Ford, Hingsbergen sent a certified letter requesting a refund. Ford did not respond, and Hingsbergen filed a grievance with relator in July 2017.

{¶ 7} Ford responded to relator's letter of inquiry in August 2017, claiming that she had reached out to Hingsbergen to try to "rectify the situation." Hingsbergen denied that Ford had made any such attempt. Several months later, Ford gave relator a copy of a letter that she purportedly sent to Hingsbergen on August 14, but she eventually conceded that Hingsbergen had never received it. Although relator subpoenaed Ford for deposition, she did not appear and had no further contact with relator until she answered the complaint in February 2019.

{¶ 8} In May 2018, more than a year after Hingsbergen requested a refund, Ford gave her $1,700 in cash and a $300 check issued from Ford's husband's personal account. Ford asked Hingsbergen to wait one day to deposit the check to make sure that there would be sufficient funds in the account. Hingsbergen complied, but the check was nevertheless returned for insufficient funds.

{¶ 9} At the panel hearing, Ford testified that she had recently mailed a $329 *cashier's check* to Hingsbergen. Two weeks after the hearing, Ford filed a notice of restitution with the board, attaching a screenshot of a text-message exchange she had had with Hingsbergen. In the exchange, Ford claimed that a *money order* she had mailed to Hingsbergen had been returned unclaimed and she asked whether she could drop off a payment at Hingsbergen's home. Relator submitted additional evidence showing that Ford paid Hingsbergen's restitution in cash and failed to comply with Hingsbergen's request that she leave the returned envelope so that Hingsbergen could investigate the failed money-order delivery.

{¶ 10} Approximately three weeks after the hearing, the panel chair conducted a telephone status conference. The board reports that at that time, Ford reiterated her testimony regarding restitution and claimed that she was unable to find the returned envelope containing the money order or the tracking number for the mailing. According to the board, although the panel chair ordered Ford to file a written response to relator's reply, including proof of restitution, Ford failed to comply. Relator's evidence of Ford's deceit and misrepresentation regarding the timing of her restitution payment therefore remained uncontroverted.

{¶ 11} The parties stipulated and the board found that Ford's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from a client), 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance), 8.1(b) (prohibiting a lawyer from failing to disclose a material fact in response to a demand for information from a disciplinary authority), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and Gov.Bar R. V(9)(G) (prohibiting a lawyer from neglecting or refusing to assist in a disciplinary investigation). We adopt these findings of misconduct.

*The Craine Matter*

{¶ 12} In December 2016, Ford orally agreed to represent Michelle Craine in a postdecree domestic-relations matter for a flat fee. Craine made an initial payment of $1,650, followed by a $2,260 payment on March 17, 2017.

{¶ 13} In January 2017, Ford filed a motion for contempt on Craine's behalf and paid the filing fee with a check issued from her husband's personal checking account. In June 2017, Craine and her former husband settled their dispute and the court ordered Craine's former husband to pay $1,500 of her legal fees. Craine's

former husband sent a check to Ford, who deposited it into her husband's personal checking account on June 20.  But by July 7, that account was overdrawn.

{¶ 14} On July 10, Ford sent Craine an e-mail falsely stating that she had "finally" received the check, that she had ordered Craine's reimbursement check from escrow (though she did not have such an account), and that Craine would have the reimbursement check by the end of the week.  Thereafter, Craine did not receive a reimbursement check, so she sent Ford several e-mails inquiring about the status of her payment between July 19 and August 15.  On August 30, Ford sent Craine an e-mail asking whether Craine had received a cashier's check and falsely stating, "I traced it through my escrow and the information for delivery was all correct." Ford did not respond to further inquiries from Craine or remit the funds to her.

{¶ 15} Ford received but did not respond to relator's letters of inquiry regarding Craine's grievance.  Ford also failed to appear for a scheduled deposition. She finally made full restitution to Craine in April 2019, after answering relator's complaint.

{¶ 16} The parties stipulated and the board found that Ford's conduct violated Prof.Cond.R. 1.14(a)(4), 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(c), 8.1(b), and 8.4(c) and Gov.Bar R. V(9)(G).  We adopt these findings of misconduct.

*The Vidourek Matter*

{¶ 17} On June 13, 2018, Ford appeared at a pretrial hearing on behalf of Sheri Vidourek, whom she had been representing for several years.  Despite Vidourek's repeated calls, texts, and e-mails in the weeks after the pretrial hearing, Ford waited two months to respond.  Relator's first letter of inquiry, sent to the business address Ford had registered with the Office of Attorney Services, was returned marked undeliverable and unable to be forwarded.  Ford received additional letters that relator sent to her registered residential address and her e-

mail address, but she did not respond to relator's inquiries. The parties stipulated and the board found that Ford's conduct violated Prof.Cond.R. 1.4(a)(4) and 8.1(b) and Gov.Bar R. V(9)(G).

*The Zink Matter*

{¶ 18} Ford represented Shana Zink in a divorce proceeding and agreed to continue representing her in postdecree child- and spousal-support matters. Zink paid $1,725 in advance fees, but Ford did not deposit the fees into a client trust account.

{¶ 19} On March 9, 2018, Ford filed a motion to modify spousal support on Zink's behalf. The court denied Zink's motion on July 2, 2018. On July 12, Ford filed a motion for leave to request findings of fact and conclusions of law and attempted to file a separate motion to set aside child support. Although the motion for leave did not require a filing fee, the clerk rejected the child-support motion because Ford had failed to pay the $125 fee required to file that motion. The following week, Ford sent Zink an e-mail informing her that the court had scheduled a hearing on the motions and requesting an additional $250 for filing fees. Zink paid Ford the $250, and Ford deposited the payment into her husband's personal checking account. A few days later, Ford sent Zink another e-mail, claiming that the hearing order had been vacated and that the court would rule on the motions later that week. But the court did not rule on the motions, and Ford did not respond to Zink's subsequent telephone calls, e-mails, or texts.

{¶ 20} On August 10, Ford filed the child-support motion and paid the $125 filing fee, but she ultimately converted the remainder of Zink's $250 deposit to her own use. Ford did not respond to Zink's e-mail terminating the representation and requesting a copy of her case file. Ford also failed to respond to relator's letter of inquiry regarding Zink's grievance.

{¶ 21} At Ford's disciplinary hearing on Monday, June 17, 2019, Ford testified that she issued a $125 Venmo[1] payment to Zink the previous Friday and that it "processed sometime over the weekend." But after the hearing, relator submitted documentation showing that Ford made the payment less than one hour before the hearing commenced.

{¶ 22} The parties stipulated and the board found that Ford's conduct violated Prof.Cond.R. 1.4(a)(4), 1.15(c), 1.16(d) (requiring a lawyer to promptly deliver client papers and property as part of the termination of representation), 8.1(b), and 8.4(c) and Gov.Bar R. V(9)(G). We adopt these findings of misconduct.

## Sanction

{¶ 23} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 24} The parties stipulated that five aggravating factors are present: Ford has a prior disciplinary record, acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, and demonstrated a lack of cooperation in the disciplinary investigations. *See* Gov.Bar R. V(13)(B)(1) through (5). In addition to these aggravating factors, the board found that Ford engaged in deceptive practices during the disciplinary process by providing false testimony and misleading evidence regarding her payment of restitution to Hingsbergen and Zink.

{¶ 25} The board found that no mitigating factors are present. Although Ford testified that she had been suffering from anxiety and panic attacks for approximately three years and had been treated for those conditions by a psychiatrist and therapist, she did not offer any additional evidence to establish those conditions as mitigating disorders under Gov.Bar R. V(13)(C)(7).

---

1. Venmo is a money-transfer service that allows users to transfer funds electronically through the Internet.

{¶ 26} Ford did not comply with the panel chair's order that the parties submit posthearing briefs regarding the appropriate sanction for her misconduct. Relator recommended that Ford be suspended from the practice of law for two years and that prior to reinstatement, she be required to submit to an evaluation by the Ohio Lawyers Assistance Program ("OLAP"), comply with any treatment recommendations arising from that evaluation, and submit proof that she is capable of returning to the competent, ethical, and professional practice of law. The board agrees with the mental-health aspects of relator's recommended sanction but recommends that Ford be indefinitely suspended from the practice of law for her misconduct.

{¶ 27} We have long recognized that " 'a lawyer's neglect of legal matters and failure to cooperate in the ensuing disciplinary investigation generally warrant an indefinite suspension from the practice of law in Ohio.' " *E.g.*, *Disciplinary Counsel v. Hoff*, 124 Ohio St.3d 269, 2010-Ohio-136, 921 N.E.2d 636, ¶ 10, quoting *Disciplinary Counsel v. Mathewson*, 113 Ohio St.3d 365, 2007-Ohio-2076, 865 N.E.2d 891, ¶ 19. "Moreover, when these infractions are coupled with dishonesty in any form, an indefinite suspension is all but guaranteed." *Disciplinary Counsel v. Golden*, 97 Ohio St.3d 230, 2002-Ohio-5934, 778 N.E.2d 564, ¶ 23.

{¶ 28} Given that Ford has neglected at least one client's legal matter, failed to reasonably communicate with four clients, failed to deposit and hold client funds in a client trust account, failed to cooperate in the ensuing disciplinary investigations, and engaged in dishonesty—both while representing clients and throughout the course of these disciplinary proceedings—we agree that an indefinite suspension is the appropriate sanction in this case.

{¶ 29} Accordingly, Elizabeth Lorraine Ford is indefinitely suspended from the practice of law in Ohio. In addition to the requirements of Gov.Bar R. V(25), her reinstatement shall be subject to the requirements that she (1) complete an

evaluation through OLAP, (2) comply with any treatment or counseling recommendations resulting from that evaluation, (3) demonstrate a sustained period of successful treatment or counseling if it is recommended, and (4) provide a prognosis from a qualified healthcare professional that she is capable of returning to the competent, ethical, and professional practice of law. Costs are taxed to Ford.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in part and dissents in part and would not impose the additional conditions for reinstatement.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Michelle R. Bowman, Assistant Disciplinary Counsel, for relator.

Elizabeth L. Ford, pro se.

_____