**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Ford*, **Slip Opinion No. 2021-Ohio-3661.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3661

DISCIPLINARY COUNSEL *v.* FORD.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Ford*, Slip Opinion No. 2021-Ohio-3661.]**

*Attorneys—Misconduct—Indefinite suspension imposed to run concurrently with prior indefinite suspension on attorney who continued to practice law and committed multiple violations of the Rules of Professional Conduct while under a disciplinary suspension—Conditions on reinstatement.*

(No. 2021-0441—Submitted June 16, 2021—Decided October 20, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-058.

_____

**Per Curiam.**

{¶ 1} Respondent, Elizabeth Lorraine Ford, of Cincinnati, Ohio, Attorney Registration No. 0068502, was admitted to the practice of law in Ohio in 1997.

{¶ 2} On December 2, 2005, we suspended Ford's license for about 13 months after she failed to register as an attorney for the 2005-2007 biennium. *See In re Attorney Registration Suspension of Ford*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671; *In re Reinstatement of Ford*, 113 Ohio St.3d 1425, 2007-Ohio-1313, 863 N.E.2d 644. On November 1, 2019, we suspended her for failing to register for the 2019-2021 biennium. *See In re Attorney Registration Suspension of Ford*, 157 Ohio St.3d 1472, 2019-Ohio-4529, 134 N.E.3d 183. And on March 19, 2020, we indefinitely suspended her for professional misconduct that included dishonesty, failing to reasonably communicate with clients in four matters, failing to deposit unearned fees into a client trust account, and failing to cooperate in the ensuing disciplinary investigations. *See Disciplinary Counsel v. Ford*, 159 Ohio St.3d 558, 2020-Ohio-998, 152 N.E.3d 256. Ford's November 2019 and March 2020 suspensions remain in effect.

{¶ 3} In a September 2020 complaint, relator, disciplinary counsel, alleged that both before and after Ford's November 2019 attorney-registration suspension, she committed professional misconduct in three other client matters. Ford stipulated to all but one of the charges, which the parties agreed to dismiss, and the parties jointly recommended that Ford serve another indefinite suspension to run concurrently with her March 2020 indefinite suspension. After a hearing before a three-member panel of the Board of Professional Conduct, the board issued a report finding that Ford had engaged in the stipulated misconduct and recommending that we impose an indefinite suspension to run consecutively to the suspension we imposed in March 2020 and that we impose conditions on her reinstatement.

{¶ 4} Based on our independent review of the record, we adopt the board's findings of misconduct and recommended sanction, but as initially recommended by the parties, we conclude that Ford's second indefinite suspension shall run concurrently with her first.

## Misconduct

### *The Goldfuss matter*

{¶ 5} On July 26, 2019, Mary April Goldfuss retained Ford to file an emergency custody action. Ford did not have a client trust account and therefore did not deposit any portion of Goldfuss's advanced fee into a trust account. After Goldfuss sent Ford two unanswered text messages seeking information about her case, Ford sent Goldfuss a text message on August 20, implying that she had filed the custody action. Specifically, Ford's message stated that she would "follow-up on our hearing date" while she was at the courthouse, that service may take longer because of the circumstances in the matter, and that she was "trying to get it set on the expedited docket." Ford, however, had not filed anything on Goldfuss's behalf.

{¶ 6} Over the next month, Goldfuss sent Ford multiple text messages seeking an update and expressing frustrations with Ford's failure to communicate. But those messages went unanswered. Goldfuss then sent a letter by certified mail and an email to Ford seeking a refund. The letter was returned as "unclaimed," and Ford did not reply to Goldfuss's email. Nor did Ford ever file anything on Goldfuss's behalf. Goldfuss filed a grievance, and although Ford initially requested an extension of time to respond to the grievance, she ultimately failed to submit a written response to relator. Ford also failed to appear for a February 2020 deposition in the disciplinary matter. In April 2020, about eight months after Goldfuss had terminated Ford's representation, Ford refunded Goldfuss's money.

{¶ 7} Based on this conduct, the parties stipulated and the board found that Ford violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from a client), 1.15(c) (requiring a lawyer to deposit advanced legal fees and expenses into a client trust account), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the

lawyer's withdrawal from employment), 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

*The Streckfuss matter*

{¶ 8} In 2018, Jeffrey Streckfuss retained Ford to assist him in reinstating his parenting time, which had been suspended after he failed to comply with a court order requiring him to complete medical and mental-health assessments. In July 2019, Ford filed the motion to reinstate Streckfuss's parenting time; the motion stated that Streckfuss had obtained the requisite health assessments. Ford, however, failed to otherwise prosecute the motion.

{¶ 9} The court scheduled a hearing for December 5, 2019, on Streckfuss's motion and on a motion for contempt filed by Streckfuss's ex-wife. Although we had imposed Ford's attorney-registration suspension on November 1, 2019, she failed to notify the court of her suspension or withdraw as Streckfuss's counsel. The night before the hearing, Ford sent Streckfuss a text message informing him of her suspension and that she was out of state due to a death in her family. In the text message, Ford advised Streckfuss to attend the hearing on his own and on how to request reinstatement of his parenting time. Ford further informed Streckfuss that obtaining a new judge was no longer possible so if the judge requested to interview his children, he should agree to it. With respect to the contempt motion, Ford advised Streckfuss to request more time in order to secure counsel and obtain more information and discovery, and she suggested that he "blame" Ford by indicating that she was out of state due to a family emergency and would no longer be involved in the case. Ford further stated that she and Streckfuss could strategize when she returned.

{¶ 10} As instructed by Ford, Streckfuss appeared for the December 5 hearing and informed a magistrate that Ford was out of state due to a death in her

family. The magistrate continued the hearing on the contempt motion but denied Streckfuss's motion to reinstate his parenting time; neither Ford nor Streckfuss had submitted evidence indicating that Streckfuss had completed the necessary health assessments. Streckfuss thereafter sent Ford several messages seeking copies of his assessments, but she did not respond to his messages.

{¶ 11} After discovering that Ford's license was suspended, the magistrate filed a grievance. Relator requested that Ford submit a written response to the grievance, but she failed to do so. She also failed to appear for a deposition.

{¶ 12} Based on this conduct, the parties stipulated and the board found that Ford violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), 1.16(a)(1) (requiring a lawyer to withdraw from representation if the representation will result in a violation of the Rules of Professional Conduct), 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction), and 8.1(b).

*The Monroe matter*

{¶ 13} In May 2019, Walter Monroe retained Ford to represent him in a divorce proceeding and provided her with his original paperwork relevant to the matter. Ford did not deposit any portion of Monroe's advanced $3,000 fee into a client trust account. Monroe and Ford thereafter agreed to hold off filing the divorce complaint.

{¶ 14} In early December 2019, Monroe sent Ford text messages requesting that she file the complaint. Ford failed to respond, and Monroe discovered that we had suspended her license and that she had a disciplinary matter already pending against her. He thereafter sent her multiple messages requesting a refund of his $3,000 and that she return his paperwork. Ford did not respond; nor did she refund his money or return his documents. Monroe filed a grievance, and Ford again failed to respond to relator's inquiries.

**{¶ 15}** Based on this conduct, the parties stipulated and the board found that Ford violated Prof.Cond.R. 1.3, 1.4(a)(4), 1.15(c), 1.16(d) (requiring a lawyer to promptly deliver client papers and property upon termination of representation), 1.16(e), and 8.1(b). Ford also stipulated that she owes Monroe $3,000 in restitution.

**{¶ 16}** We agree with the board's findings of misconduct.

### Sanction

**{¶ 17}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 18}** As for aggravating factors, the board found that Ford has a prior disciplinary record and had a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, failed to initially cooperate in the disciplinary investigations, and failed to make restitution. *See* Gov.Bar R. V(13)(B)(1) through (5) and (9). The board found only one mitigating factor: after the filing of relator's formal complaint, Ford made full and free disclosures and had a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(4). Although Ford testified about her mental-health struggles and submitted information from her treating medical professionals, the board found— and we agree—that she failed to submit sufficient evidence establishing the existence of a qualifying mental disorder under Gov.Bar R. V(13)(C)(7).

**{¶ 19}** In crafting a recommended sanction, the board noted that Ford's misconduct here was similar to the misconduct that resulted in her March 2020 indefinite suspension and had occurred during the same approximate time period— except that in this matter, Ford also violated Prof.Cond.R. 5.5(a). The board acknowledged that disbarment is the presumed sanction for an attorney who continued to practice while suspended, but it concluded that Ford's particular misconduct here was not so egregious as to warrant the ultimate sanction of

permanent disbarment. The board therefore recommended that we issue another indefinite suspension to run consecutively with her prior indefinite suspension and impose conditions on her reinstatement.

{¶ 20} We agree that an indefinite suspension is appropriate. Although we have held that the presumptive sanction for continuing to practice law while suspended is disbarment, we have also "clarified that an indefinite suspension is more appropriate for attorneys who continued to practice law after we had suspended their licenses for continuing-legal-education and registration violations." *Disciplinary Counsel v. Sarver*, 163 Ohio St.3d 371, 2020-Ohio-5478, 170 N.E.3d 799, ¶ 45; *see also Disciplinary Counsel v. Freeman*, 126 Ohio St.3d 389, 2010-Ohio-3824, 934 N.E.2d 328, ¶ 14 ("we have routinely imposed indefinite suspensions for attorneys who continued to practice law after we have suspended their licenses for [continuing-legal-education] and registration violations"). Here, Ford admitted that she violated Prof.Cond.R. 5.5(a) by giving legal advice to Streckfuss after her November 1, 2019 attorney-registration suspension.

{¶ 21} We also conclude that, as jointly recommended by the parties, Ford's indefinite suspension shall run concurrently with the indefinite suspension that we imposed in March 2020. Although each disciplinary case is an independent action, "relatively contemporaneous ethical infractions prosecuted separately do not necessarily justify a harsher sanction." *Dayton Bar Assn. v. Scaccia*, 143 Ohio St.3d 144, 2015-Ohio-2487, 34 N.E.3d 919, ¶ 17. Therefore, when appropriate, we have imposed a suspension to run concurrently with a prior sanction if the misconduct in both cases occurred over essentially the same time period. *See, e.g., id.*; *Cuyahoga Cty. Bar Assn. v. Scott-Chestang*, 113 Ohio St.3d 310, 2007-Ohio-1956, 865 N.E.2d 48. As acknowledged by the board, Ford's misconduct here and in her prior case was cumulative, having occurred over a continuation of the same general period of time.

{¶ 22} Further, to support the imposition of a consecutive indefinite suspension, the board mostly cited cases in which the attorneys failed to participate in the second disciplinary matter, resulting in default proceedings. *See, e.g.*, *Cuyahoga Cty. Bar Assn. v. King*, 109 Ohio St.3d 95, 2006-Ohio-1932, 846 N.E.2d 37; *Dayton Bar Assn. v. Siehl*, 135 Ohio St.3d 261, 2013-Ohio-735, 985 N.E.2d 1274; *Cuyahoga Cty. Bar Assn. v. Church*, 116 Ohio St.3d 563, 2008-Ohio-81, 880 N.E.2d 917. But here, after the filing of relator's formal complaint, Ford cooperated in the disciplinary process, and the matter resulted in a fully stipulated case.

**Conclusion**

{¶ 23} For the reasons explained above, Elizabeth Lorraine Ford is indefinitely suspended from the practice of law in Ohio. The suspension shall run concurrently with the indefinite suspension imposed on March 19, 2020, in *Disciplinary Counsel v. Ford*, 159 Ohio St.3d 558, 2020-Ohio-998, 152 N.E.3d 256. In addition to the requirements of Gov.Bar R. V(25), Ford's reinstatement shall be conditioned on submission of proof that she has (1) made restitution to Walter Monroe in the amount of $3,000, (2) undergone an evaluation by the Ohio Lawyers Assistance Program and complied with any treatment or counseling recommendations resulting from the evaluation, and (3) obtained a written opinion from a qualified healthcare professional that she is capable of returning to the competent, ethical, and professional practice of law. Costs are taxed to Ford.

Judgment accordingly.

KENNEDY, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

O'CONNOR, C.J., concurs in part and dissents in part and would impose a permanent disbarment.

FISCHER, J., concurs in part and dissents in part, with an opinion.

_____

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 24} I agree with the majority opinion's adoption of the Board of Professional Conduct's findings of misconduct committed by respondent, Elizabeth Lorraine Ford, and I concur in the decision to indefinitely suspend her from the practice of law. I disagree, however, with the majority opinion's conclusion that an indefinite suspension to run concurrently with Ford's prior indefinite suspension is warranted in this case. Rather, I agree with the board that Ford's sanction for her misconduct should be an indefinite suspension that would run, in effect, consecutively to the indefinite suspension that we imposed on March 19, 2020, with her second indefinite suspension beginning on the date of this opinion. Therefore, I must respectfully concur in part and dissent in part.

**An indefinite suspension to run consecutively to Ford's previous indefinite suspension is the appropriate sanction for her misconduct**

{¶ 25} Based on Ford's cumulative misconduct—practicing law while under suspension after failing to register for the 2019-2021 biennium and numerous violations of the Rules of Professional Conduct—the board determined that Ford should be indefinitely suspended from the practice of law, with conditions, and that the suspension should run consecutively to the indefinite suspension that this court imposed on March 19, 2020. While this court is the ultimate arbiter of attorney discipline and we are always free to exercise our independent judgment as to evidentiary weight and applicable law, *see Disciplinary Counsel v. Kelly*, 121 Ohio St.3d 39, 2009-Ohio-317, 901 N.E.2d 798, ¶ 11, I believe this court should adopt the board's recommended sanction in this case.

{¶ 26} "The primary purpose of the disciplinary process is to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship and to allow us to ascertain the lawyer's fitness to practice law." *Disciplinary Counsel v. Sabroff*, 123 Ohio St.3d 182, 2009-Ohio-4205, 915 N.E.2d 307, ¶ 20. The court considers all relevant factors, including the ethical duties violated, the aggravating and mitigating factors listed in Gov.Bar R.

V(13), and the sanctions adopted in similar cases when deciding the appropriate sanction for attorney misconduct. *Disciplinary Counsel v. Sarver*, 163 Ohio St.3d 371, 2020-Ohio-5478, 170 N.E.3d 799, ¶ 27; *Dayton Bar Assn. v. Sullivan*, 158 Ohio St.3d 423, 2020-Ohio-124, 144 N.E.3d 401, ¶ 28.

{¶ 27} The presumptive sanction for continuing to practice law while under suspension is disbarment. *Sarver* at ¶ 28; *Disciplinary Counsel v. Hoskins*, 150 Ohio St.3d 41, 2017-Ohio-2924, 78 N.E.3d 845, ¶ 27. However, "an indefinite suspension is more appropriate for attorneys who continued to practice law after we had suspended their licenses for continuing-legal-education and registration violations as well as for those who continued to practice law during suspensions for less egregious forms of misconduct." *Sarver* at ¶ 45.

{¶ 28} Indefinite suspension, at the very least, is an appropriate sanction in this case because Ford practiced law while under suspension for failing to register for the 2019-2021 biennium, *see Disciplinary Counsel v. Ford*, 159 Ohio St.3d 558, 2020-Ohio-998, 152 N.E.3d 256, ¶ 1. However, we must determine whether Ford's indefinite suspension in this case should run consecutively with or concurrently to the indefinite suspension that we imposed in March 2020.

{¶ 29} While "relatively contemporaneous ethical infractions prosecuted separately do not necessarily justify a harsher sanction," *Dayton Bar Assn. v. Scaccia*, 143 Ohio St.3d 144, 2015-Ohio-2487, 34 N.E.3d 919, ¶ 17, sometimes consecutive sanctions can be necessary " 'to ensure a lawyer's rehabilitation and thereby protect the public from additional misconduct,' " *id*., quoting *Disciplinary Counsel v. Young*, 113 Ohio St.3d. 36, 2007-Ohio-975, 862 N.E.2d 504, ¶ 32. When considering whether to impose an indefinite suspension concurrently with or consecutively to a previously imposed indefinite suspension, this court has looked at several factors, including the time frame of the violations, the attorney's cooperation in the disciplinary process, and the seriousness of the misconduct. *See Cuyahoga Cty. Bar Assn. v. King*, 109 Ohio St.3d 95, 2006-Ohio-1932, 846 N.E.2d

37, ¶ 9 (a consecutive indefinite suspension was appropriate when the attorney failed to cooperate in the disciplinary process and committed serious violations of the Rules of Professional Conduct); *Young* at ¶ 31-34 (a consecutive indefinite suspension was appropriate when the combination of the attorney's abandonment of his duties to his incompetent ward and his prior disciplinary record outweighed evidence of good character and cooperation in the disciplinary process); *Cuyahoga Cty. Bar Assn. v. Scott-Chestang*, 113 Ohio St.3d 310, 2007-Ohio-1956, 865 N.E.2d 48, ¶ 4, 9-10 ("*Scott-Chestang II*") (a concurrent indefinite suspension was imposed on an attorney whose misconduct occurred within the same time frame as the misconduct that resulted in a prior indefinite suspension). Given the serious violations that Ford committed prior to the temporary suspension imposed in November 2019 and during the temporary suspension, all while disciplinary matters were pending, I believe the indefinite suspensions should run consecutively.

{¶ 30} In Ford's most recent disciplinary case, decided in March 2020, this court found that, between 2016 and 2018, Ford violated Prof.Cond.R. 1.4(a)(4), 1.15(c), 1.16(d), 8.1(b), and 8.4(c), and Gov.Bar R. V(9)(G). *Ford* at ¶ 5, 12, 17, 19, 22. As a result of Ford's misconduct, we determined that an indefinite suspension was the appropriate sanction to protect the public. *Ford* at ¶ 29.

{¶ 31} In this matter, we find that Ford committed similar violations relating to client matters. She violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), 1.15(c), 1.16(e), and 8.1(b) on more than one occasion and also violated Prof.Cond.R. 1.16(a), 1.16(d), 5.5(a), and 8.4(c), all between 2018 and 2020. Though Ford's actions demonstrate a long pattern of misconduct, I do not believe we can reasonably find that these violations were committed contemporaneously with her other violations. In *Scott-Chestang II*, the court determined that a concurrent indefinite suspension was appropriate because new violations in 2003 occurred during the same time frame as the attorney's previous violations, which

had occurred between 2000 and 2003. *Scott-Chestang II*, at ¶ 4, 9-10; *see also Cuyahoga Cty. Bar Assn. v. Scott-Chestang*, 109 Ohio St.3d 405, 2006-Ohio-2711, 848 N.E.2d 507, ¶ 3-26. In contrast, the time frames in Ford's two disciplinary cases do not demonstrate contemporaneous violations but rather a continuing pattern of client neglect, a failure to communicate, and dishonest behavior, with the instances in this case occurring over a two-year time frame *subsequent* to the time frame in the first case. Therefore, concurrent indefinite suspensions are not supported, because these violations did not occur within the same time frame.

{¶ 32} Furthermore, while Ford somewhat cooperated in the disciplinary process, her misconduct was very serious—she ignored her clients who had time-sensitive cases, like emergency-custody actions and motions for parenting time, and she lied to those clients about the status of their cases, all while wrongfully keeping some funds paid for services that she never rendered. Ford's violations occurred in matters relating to family law, and Ford was entrusted by one client to aid in asserting one of the most fundamental liberty interests—the right to parent one's child. *See In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990) (parents have a fundamental liberty interest in the care, custody, and management of their child, and the right to raise one's child is an essential and basic civil right). Ford abandoned her vulnerable clients in their times of need, displayed a dishonest and selfish motive, and added insult to injury to one client when she failed to make restitution. While Ford's misconduct is not as egregious as that in *Young*, the misconduct is serious enough to warrant a consecutive indefinite suspension to protect the public.

{¶ 33} A consecutive indefinite suspension will certainly help better protect the public; the additional time may also help Ford get the support that she needs. While unable to consider Ford's mental health as a mitigating factor due to her failure to provide sufficient evidence of her condition, the record does indicate that Ford's mental-health concerns and serious stressors may have contributed to her

misconduct. The board recommended and this court adopted as a condition of its sanction that Ford undergo an evaluation by the Ohio Lawyers Assistance Program and comply with any treatment or counseling recommendations resulting from that evaluation. Additional time away from the practice of law could be beneficial and an incentive for Ford to get the assistance and support that she needs before she can be considered for reinstatement.

{¶ 34} Finally and notably, neither party objected to the board's recommendation of a consecutive indefinite suspension. After reviewing the record, the applicable law, and the board's report and recommendation, I believe a consecutive indefinite suspension is appropriate in this case.

### Conclusion

{¶ 35} I would find that a consecutive indefinite suspension with the conditions recommended by the board is the appropriate sanction for Ford's serious violations of the Rules of Professional Conduct in this case and would conclude that this suspension begins as of the date of this opinion. A consecutive indefinite suspension, a sanction that neither party objected to, is supported by law and is the best solution to protect the public and to help Ford get the assistance that she needs. Because the majority opinion reaches a different conclusion as to when the indefinite suspension in this case should begin, I must respectfully concur in part and dissent in part.

––––––––––––––––––

Joseph M. Caligiuri, Disciplinary Counsel, and Michelle R. Bowman and Martha S. Asseff, Assistant Disciplinary Counsel, for relator.

Elizabeth L. Ford, pro se.

––––––––––––––––––