**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Vick*, **Slip Opinion No. 2024-Ohio-557.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-557

DISCIPLINARY COUNSEL *v.* VICK.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Vick*, Slip Opinion No. 2024-Ohio-557.]**

*Attorneys—Misconduct—Multiple violations of the Rules of Professional Conduct, including neglecting client matters, failing to refund unearned legal fees, engaging in conduct prejudicial to the administration of justice, engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and knowingly failing to respond to demands for information in connection with a disciplinary matter—Permanent disbarment and restitution ordered.*

(No. 2022-0939—Submitted July 18, 2023—Decided February 20, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-024.

_____

**Per Curiam.**

{¶ 1} Respondent, Gary Allen Vick Jr., whose last known business address was in Parma, Ohio, Attorney Registration No. 0071495, was admitted to the practice of law in Ohio in 1999. We indefinitely suspended his license on July 27, 2022, based on findings that he had neglected six clients' legal matters, failed to reasonably communicate with those clients, failed to refund their unearned fees, lied to one of them, and failed to cooperate in several of the ensuing disciplinary investigations. *Disciplinary Counsel v. Vick*, 168 Ohio St.3d 683, 2022-Ohio-2541, 200 N.E.3d 1118.

{¶ 2} On August 26, 2022, we imposed an additional interim suspension based on Vick's failure to respond to the three-count complaint filed by relator in this case. *See* 2022-Ohio-2965.

{¶ 3} In January 2023, we granted relator's motion to remand this proceeding to the Board of Professional Conduct to seek Vick's permanent disbarment. *See* Gov.Bar R. V(14)(D). In February 2023, relator filed his motion for default disbarment supported by 37 sworn or certified exhibits, including the affidavits of three of Vick's former clients, counsel for one of those clients, an assistant disciplinary counsel, and relator's investigator. *See* Gov.Bar R. V(14)(F). In the midst of those filings, we suspended Vick's license on an interim basis for a second time based on his conviction of a fifth-degree felony count of grand theft. *In re Vick*, 170 Ohio St.3d 1260, 2023-Ohio-298, 211 N.E.3d 147. That conviction stemmed from Vick's theft of $19,000 in fees paid by six clients—including two of the clients whose complaints have given rise to this case.

{¶ 4} The board referred relator's motion for permanent disbarment to an attorney-commissioner for disposition in accordance with Gov.Bar R. V(14)(F)(2)(a). The commissioner recommended that Vick be permanently disbarred based on findings that, among other things, Vick neglected three client matters, failed to reasonably communicate with those clients, misappropriated the

advanced fees of two of those clients, and failed to cooperate in the ensuing disciplinary investigations. The board adopted the commissioner's findings of fact and conclusions of law and agreed that Vick should be permanently disbarred. After thoroughly reviewing the record, we adopt the board's findings of misconduct and permanently disbar Vick from the practice of law in Ohio.

## MISCONDUCT

### Counts 1 and 3—The Lupica and Campbell Matters

{¶ 5} In October 2020, Vick agreed to represent Leah Lupica in a child-support matter for a flat fee of $3,500. He did not ask her to sign a written fee agreement. The following month, she met with Vick in her bank's parking lot and paid him the flat fee of $3,500. At that time, Vick briefly reviewed some paperwork with Lupica and gave her copies of two affidavits—but he did not ask her to sign them. Vick told Lupica that he would file paperwork on her behalf and that she would get notice of her court date in the mail. Despite those representations, Vick took no further action on Lupica's behalf.

{¶ 6} Lupica began texting Vick in mid-November 2020 to inquire about the status of her case. Vick did not respond to her first two text messages. In response to her third message, he replied that he was "[d]ealing with a family emergency" and that he would "touch base" with her over the weekend. Lupica waited a few days before she began to text Vick again. Vick waited almost a week to respond. He stated that he would be in court the following morning and suggested that they "chat tomorrow afternoon." Although Lupica sent him no less than nine additional text messages and requested a refund of her $3,500 fee, Vick never contacted her again and never issued her a refund.

{¶ 7} Reginald Campbell had a similar experience with Vick's representation of him in a criminal matter. In August 2021, Campbell was arrested and then charged in the Shaker Heights Municipal Court with three offenses related to driving under the influence of alcohol. He hired Vick to represent him and paid

3

Vick $2,500, but Campbell did not sign a written fee agreement. After filing a notice of appearance, Vick entered not-guilty pleas and waived speedy-trial rights on Campbell's behalf. Although Campbell asked Vick about obtaining driving privileges in light of his job as a valet, Vick took no action on that request. Campbell later applied for and obtained limited driving privileges without Vick's assistance.

{¶ 8} Campbell called Vick numerous times to inquire about the status of his case. Vick either failed to return those calls or, on the occasions that he spoke to Campbell, he falsely stated that "the prosecutor keeps asking for a continuance," as the docket shows that Vick was the only one to request a continuance in Campbell's case. Vick did not consult with Campbell and took no further action on his behalf. Consequently, Campbell obtained new counsel in November 2021. As of February 1, 2023, Vick had not responded to requests from Campbell or his new counsel for the return of Campbell's file and unearned fee.

{¶ 9} In response to a subpoena, PNC Bank produced records for Vick's business and joint checking accounts from October 2020 through November 2021. Those records show that Vick deposited Lupica's $3,500 cashier's check and Campbell's electronic payment of $2,485 into his business checking account on November 2, 2020, and August 23, 2021, respectively.[1]

{¶ 10} The bank records demonstrate that Vick quickly misappropriated the funds he received from Lupica and Campbell by paying for various personal purchases directly from his business checking account and electronically transferring funds to his personal checking account and two investment accounts. The ending balance in Vick's business checking account dropped to $746.11 on November 30, 2020, and to just $88.87 on August 31, 2021, when on the latter date it should have held $6,000 in unearned fees paid by Lupica and Campbell.

---

1. Campbell submitted a receipt from PayPal, an electronic-payment service, showing a $2,572.80 payment he made to Vick, and he averred that that amount also included a transaction fee.

**{¶ 11}** The board found by clear and convincing evidence that Vick's conduct in both the Lupica and Campbell matters violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with a client's reasonable requests for information), 1.15(a) (requiring a lawyer to hold the funds of clients in an interest-bearing client trust account, separately from the lawyer's own funds), 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The board also found that Vick's conduct in the Campbell matter violated Prof.Cond.R. 1.16(d) (requiring a lawyer to promptly deliver client papers and property as part of the termination of representation). We adopt these findings of misconduct.

### Count 2—The Rector Matter

**{¶ 12}** In February 2016, Dan Rector was seriously injured in an automobile accident in which his vehicle was rear-ended by another vehicle. A few days after the accident, Rector retained Vick to pursue a civil action against the driver of the other vehicle.

**{¶ 13}** In August 2017, Vick filed a civil complaint on Rector's behalf in the Cuyahoga County Court of Common Pleas. With discovery deadlines and a pretrial hearing approaching in February 2018, Vick filed a notice voluntarily dismissing Rector's complaint under Civ.R. 41(A). Vick refiled Rector's case later the same day. But he failed to comply with discovery requests in the refiled case as demonstrated by the trial court's granting of the defendant's unopposed motion to compel discovery and a subsequent motion to compel authorization for the release of Rector's medical records. Vick also failed to inform Rector that the court

had ordered Rector to appear and be deposed—and neither Vick nor Rector appeared for the scheduled deposition.

**{¶ 14}** Vick did not tell Rector that the court granted the defendant's unopposed motion to dismiss the case in April 2019. Over the following months, Vick occasionally responded to Rector's numerous text messages, emails, and phone calls seeking information about the status of his case, but he offered Rector little more than empty promises to provide additional information and to fix the matter.

**{¶ 15}** In August 2019, Vick refiled Rector's complaint for a second time. The defendant filed a motion for summary judgment arguing that the complaint should be dismissed on procedural grounds. Over Vick's opposition, the court granted the motion. Vick filed a notice of appeal and an appellate brief on Rector's behalf. He also participated in oral argument. In August 2021, on the day that the court of appeals affirmed the trial court's judgment, Rector sent Vick a text message asking if they had lost the appeal. Vick did not respond. Rector later sent Vick a letter terminating his representation and requesting a copy of the case file, but, again, Vick did not respond.

**{¶ 16}** The board found that Vick's conduct in his representation of Rector violated Prof.Cond.R. 1.3, 1.4(a)(2) (requiring a lawyer to reasonably consult with a client about the means by which the client's objectives are to be accomplished), 1.4(a)(3), 1.4(a)(4), 1.16(d), 3.4(d) (prohibiting a lawyer from failing to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).[2]

---

2. Due to an apparent typographical error, the board's report identified the charged violation of Prof.Cond.R. 8.4(d) as a violation of Prof.Cond.R. 8.4(c), though the board's description of the rule matches Prof.Cond.R. 8.4(d).

**Failure to Cooperate in the Disciplinary Process**

{¶ 17} During the pendency of Vick's prior disciplinary action in the fall of 2021, relator sent four letters of inquiry to Vick at the email address he had registered with the Office of Attorney Services—two each for the Lupica and Rector grievances. Vick did not respond to any of those letters. Consequently, in January 2022, relator's investigator personally served Vick with a subpoena duces tecum ordering him to appear remotely for a deposition on February 10, 2022. Enclosed with that subpoena were letters informing Vick that his deposition appearance could be excused if he submitted complete responses to the Lupica and Rector grievances before January 27, 2022. Vick did not respond to the grievances or appear for his deposition. Around the time of his scheduled deposition, he also failed to respond to two letters of inquiry regarding Campbell's grievance.

{¶ 18} On these facts, the board found that Vick's conduct with respect to the Lupica, Rector, and Campbell grievances violated Prof.Cond.R. 8.1(b) (prohibiting a lawyer from knowingly failing to respond to demands for information in connection with a disciplinary matter). We adopt these findings of misconduct.

**RECOMMENDED SANCTION**

{¶ 19} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 20} No mitigating factors and six aggravating factors are present in this case. As noted above, Vick has previously been disciplined for similar acts of misconduct, including the neglect of six client matters, the failure to reasonably communicate with those clients, the misappropriation of client funds, and the failure to cooperate in the ensuing disciplinary investigation. *See* Gov.Bar R. V(13)(B)(1); *Vick*, 168 Ohio St.3d 683, 2022-Ohio-2541, 200 N.E.3d 1118. A significant part of Vick's misconduct in the Lupica and Rector matters occurred

contemporaneously with the misconduct at issue in his earlier disciplinary case. He also failed to cooperate in the investigation of his alleged misconduct with respect to Lupica and Rector and engaged in additional misconduct in the Campbell matter—even as he stipulated to engaging in the same types of misconduct in his earlier case. *See* Gov.Bar R. V(13)(B)(5).

{¶ 21} The four remaining aggravating factors consist of Vick's selfish motive, his commission of multiple offenses, his failure to acknowledge the wrongful nature of his misconduct, and his failure to make restitution to Lupica and Campbell. *See* Gov.Bar R. V(13)(B)(2), (4), (7), and (9).

{¶ 22} As part of the sanction for his grand-theft conviction, Vick has been ordered to pay restitution of $3,500 to Lupica and $3,000 to Campbell. Therefore, the board recommended that no additional order of restitution was necessary with respect to them. The board also found that the Lawyers' Fund for Client Protection is entitled to reimbursement of $5,000 for an award it made to another of Vick's former clients for a fee that Vick collected but did not earn.

{¶ 23} "Taking retainers and failing to carry out contracts of employment is tantamount to theft of the fee from the client." *Cincinnati Bar Assn. v. Weaver*, 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 16, citing *Disciplinary Counsel v. Sigall*, 14 Ohio St.3d 15, 17, 470 N.E.2d 886 (1984). The presumptive sanction for such acts of misappropriation is disbarment. *Id.*, citing *Disciplinary Counsel v. France*, 97 Ohio St.3d 240, 2002-Ohio-5945, 778 N.E.2d 573, ¶ 11.

{¶ 24} In this case, Vick has also neglected three client matters, failed to reasonably communicate with those clients, failed to comply with their requests for information, made false statements to Campbell, and failed to return Campbell's file to him. Vick's misconduct in the Rector matter was prejudicial to the administration of justice in that it deprived Rector of the opportunity to have his legal claim decided on the merits. Vick's complete failure to cooperate in the resulting disciplinary proceedings has now culminated in the recommendation of

relator and the board that we impose the ultimate sanction of permanent disbarment in this default proceeding.

{¶ 25} In support of its recommendation that Vick be permanently disbarred for his misconduct, the board cited two cases in which we imposed that sanction for similar misconduct in default disciplinary proceedings: *Cleveland Metro. Bar Assn. v. Freeman*, 128 Ohio St.3d 421, 2011-Ohio-1483, 945 N.E.2d 1034, and *Disciplinary Counsel v. Henry*, 127 Ohio St.3d 398, 2010-Ohio-6206, 939 N.E.2d 1255.

{¶ 26} Freeman committed multiple ethical violations in his handling of eight separate client matters. *Freeman* at ¶ 2, 22. Like Vick, he neglected his clients' legal matters, failed to reasonably communicate with his clients and to comply with their reasonable requests for information regarding their cases, misappropriated client funds, made false statements to clients, and failed to cooperate in the resulting disciplinary investigations. *Id*. at ¶ 22. In addition, Freeman failed to attend scheduled court appearances and made false statements to relator's investigator. *Id*. Many of the aggravating factors present in this case were also present in *Freeman*, but in contrast to Vick, Freeman had a clean disciplinary record, *id*. at ¶ 23. Despite the presence of that lone mitigating factor, we concluded that permanent disbarment was the only appropriate sanction for Freeman's misconduct. *Id*. at ¶ 25.

{¶ 27} We permanently disbarred Henry for engaging in similar acts of misconduct. Henry neglected seven client legal matters, prejudicing the administration of justice in six of those matters. *Henry* at ¶ 6, 9-10, 13, 15, 19, 24. He failed to refund unearned fees to three clients, twice failed to return client papers and property on the termination of his representation, and charged clearly excessive fees. *Id*. at ¶ 10, 13, 19, 24. He also failed to keep one client reasonably informed about the status of his legal matter. *Id*. at ¶ 15. Henry knowingly failed to respond to relator's multiple letters of inquiry regarding nine separate client grievances and

relator's additional efforts to communicate with him. *Id.* at ¶ 26-29. Aggravating factors in *Henry* consisted of his failure to cooperate in the disciplinary process, his refusal to acknowledge the wrongful nature of his misconduct, the harm he caused to vulnerable clients, and his failure to make restitution. *Id*. at ¶ 32. In contrast to Vick, who has previously been disciplined for the same types of misconduct at issue here, Henry had a clean disciplinary record, *id*.

{¶ 28} As mentioned above, a significant part of Vick's misconduct in this case occurred contemporaneously with the misconduct at issue in his earlier disciplinary case. We have previously acknowledged that "[a]lthough each disciplinary case is an independent action, 'relatively contemporaneous ethical infractions prosecuted separately do not necessarily justify a harsher sanction.' " *Disciplinary Counsel v. Ford*, 167 Ohio St.3d 6, 2021-Ohio-3661, 188 N.E.3d 1018, ¶ 21, quoting *Dayton Bar Assn. v. Scaccia*, 143 Ohio St.3d 144, 2015-Ohio-2487, 34 N.E.3d 919, ¶ 17. We therefore recognized that, "when appropriate, we have imposed a suspension to run concurrently with a prior sanction if the misconduct in both cases occurred over essentially the same time period." *Id*.

{¶ 29} In *Disciplinary Counsel v. Ford*, 159 Ohio St.3d 558, 2020-Ohio-998, 152 N.E.3d 256, we indefinitely suspended an attorney in March 2020 for misconduct that included dishonesty, failure to reasonably communicate with four clients, failure to deposit unearned fees into a client trust account, misappropriation of client funds, and failure to cooperate in the ensuing disciplinary investigations. In September 2020, Ford was charged with engaging in similar misconduct with respect to several additional client matters during the same approximate time period as the offenses for which she had previously been disciplined. *Ford*, 167 Ohio St.3d 6, 2021-Ohio-3661, 188 N.E.3d 1018, at ¶ 3, 19. Emphasizing that Ford's cooperation in the disciplinary proceedings after the realtor filed his second complaint had resulted in a fully stipulated case, we imposed a second indefinite

suspension and ordered that it run concurrently with Ford's earlier indefinite suspension. *Id*. at ¶ 3-4, 18, 22.

**{¶ 30}** In contrast to Ford, Vick failed to cooperate in the investigation of the misconduct at issue in this case, even as he stipulated to engaging in the same types of misconduct in his earlier disciplinary case. His recalcitrance has continued for well over a year after we indefinitely suspended him from the practice of law in his earlier case, resulting in an interim default suspension and this uncontested default-disbarment proceeding.

**{¶ 31}** Based on the facts and precedent set forth above, and in the absence of any mitigating evidence to support the imposition of a lesser sanction, we are persuaded that the proper sanction for Vick's misconduct is permanent disbarment.

### CONCLUSION

**{¶ 32}** Accordingly, Gary Allen Vick Jr. is permanently disbarred from the practice of law in Ohio and is ordered to make restitution of $5,000 to the Lawyers' Fund for Client Protection for the claim awarded on December 2, 2022. Costs are taxed to Vick.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ., concur.

BRUNNER, J., not participating.

————————————

Joseph M. Caligiuri, Disciplinary Counsel, and Kelli C. Murphy, Assistant Disciplinary Counsel, for relator.

————————————